H. GILLIAM NICHOLSON v. STATE EDUCATION ASSISTANCE AUTHORITY, AND THE MEMBERS OF ITS BOARD OF DIRECTORS: GEORGE WATTS HILL, JR., ROGER GANT, JR., VICTOR E. BELL, JR., MRS. CARRIE W. HARPER, J. RUSSELL KIRBY, ARTHUR D. WENGER AND H. EDMUNDS WHITE AND COLLEGE FOUNDATION, INC. AND WACHOVIA BANK & TRUST COMPANY, N.A.

No. 34

(Filed 11 July 1969)

1. Constitutional Law §§ 6, 10— branches of government — Supreme Court — General Assembly

The Supreme Court and the General Assembly are coordinate branches of the State government, and neither is the superior of the other.

**2. Constitutional Law § 10— power of Supreme Court to declare statute unconstitutional**

The authority of the Supreme Court to declare an act of the Legislature unconstitutional arises from, and is an incident of, its duty to determine the respective rights and liabilities or duties of litigants in a controversy brought before it by the proper procedure.

**3. Appeal and Error § 2— nature of appellate jurisdiction — conflict between rules of law**

In the event of a conflict between two rules of law, the Supreme Court must determine which is the superior rule and, therefore, the rule governing the rights and liabilities or duties of the parties to the controversy before the Court.

**4. Constitutional Law § 10— nature of judicial power — conflict between statute and Constitution**

If there is a conflict between a statute and the Constitution, the Supreme Court must determine the rights and liabilities or duties of the litigants before it in accordance with the Constitution, because the Constitution is the superior rule of law in that situation.

**5. Appeal and Error § 3— review of constitutional questions — Supreme Court — other questions**

When it becomes necessary for the Supreme Court to pass upon the constitutional validity of a legislative provision, it will not anticipate other questions of constitutional law not necessary to the decision of the precise controversy presented in the litigation before it.

**6. Appeal and Error § 3; Constitutional Law § 4— review of constitutional questions — parties**

The Supreme Court will not determine the constitutionality of a legislative provision in a proceeding in which there is no actual antagonistic interest in the parties.

**7. Constitutional Law § 4— person who may assert constitutional questions**

Only one who is in immediate danger of sustaining a direct injury from legislative action may assail the validity of such action, and it is not sufficient that he has merely a general interest common to all members of the public.

**8. Constitutional Law § 4— persons entitled to assert constitutional questions — taxpayer**

A taxpayer, as such, does not have standing to attack the constitutionality of any and all legislation, but he may challenge, by suit for injunction, the constitutionality of a tax levied, or proposed to be levied, upon him for an illegal or unauthorized purpose.

**9. Constitutional Law § 4— constitutionality of statute — suit for injunction — direct and irreparable injury**

Constitutionality of a statutory provision may not be tested by a suit for injunction unless the plaintiff alleges, and shows, that the carrying out of the provision he challenges will cause him to sustain, personally, a

direct and irreparable injury, apart from his general interest as a citizen in good government in accordance with the provisions of the Constitution.

**10. Appeal and Error § 3; Constitutional Law § 10— review of constitutional questions — effect of stipulated questions**

The fact that both parties to an action desire the determination of the constitutionality of an entire act of the Legislature and stipulate that certain questions, leading to such determination, are presented by the action for the determination of the Court is not binding upon the Court, and such stipulation does not require or authorize the Court to pass upon the constitutional questions not necessary to the determination of the right of the party who denies the validity of the legislation.

**11. Constitutional Law § 4— person entitled to assert constitutional questions — stockholder**

Plaintiff's allegation that he is a stockholder, or otherwise beneficially interested, in one or more corporations which pay taxes within the State, and his allegations that these corporations have issued non-tax-exempt notes and bonds bearing rates of interest which are higher than they would be if such securities were tax exempt, do not give plaintiff standing to attack the constitutionality of the legislation of which he complains, unless such legislation directly injures the plaintiff as taxpayer.

**12. Colleges and Universities; Injunctions § 11— injunction to restrain activities of Education Assistance Authority — issuance of bonds — injury to plaintiff**

Since issuance of tax exempt revenue bonds by the State Education Assistance Authority for purpose of financing loans to college students does not pledge the credit of the State or of any political subdivision thereof, G.S. 116-209.12, plaintiff, as taxpayer, can suffer no injury from the issuance of the bonds and has no interest therein except his general interest as a member of the public in good government pursuant to the Constitution, and, consequently, plaintiff has no standing to seek an injunction restraining actions of the Authority and its fiscal agent relating to the issuance of the bonds and the expenditure of the proceeds thereof in accordance with Chapter 1177 of the Session Laws of 1967 (G.S. 116-209.1 to G.S. 116-209.15).

**13. Colleges and Universities— injunction to restrain activities of Education Assistance Authority — attack on appropriations**

Plaintiff is not entitled to attack appropriation of funds from the general tax revenues of the State to the Education Assistance Authority where he alleges that such appropriation was for use by the Authority "in the performance of its lawful functions" and he does not attack the statutes establishing the Authority.

**14. Colleges and Universities; Injunctions § 11— injunction against state agency — completed expenditure of funds**

Expenditure of tax funds for travel expenses of the Secretary of the Education Assistance Authority, even if unlawful, was an accomplished fact prior to institution of plaintiff's action to restrain the activities of

NICHOLSON v. EDUCATION ASSISTANCE AUTHORITY

. the Authority and cannot be prevented or redressed by issuance of injunction.

**15. Colleges and Universities— injunction to restrain activities of Education Assistance Authority — funds for lawful functions**

Allegation that Education Assistance Authority, by expressing its intent to issue a further series of bonds, has indicated that "additional tax funds will be expended" unless enjoined by the Supreme Court, *is held* not to afford a basis for injunctive relief where the allegation is consistent with a contemplated use of funds for the lawful functions of the Authority, such as the payment of salaries and expenses of employees as authorized by G.S. 116-201 to G.S. 116-209.

**16. Colleges and Universities; Constitutional Law § 4— review of constitutional questions — injury to plaintiff**

Where plaintiff has not alleged facts showing, and the stipulated facts do not show, that any contemplated or threatened use of funds or other activity of the State Education Assistance Authority will, if accomplished, result in any injury to plaintiff as a taxpayer or as a stockholder of any corporation, the constitutional questions raised by plaintiff are not before the Supreme Court.

**17. Injunctions § 1— nature of the remedy**

An injunction will not issue to prevent that which has already been done.

**18. Colleges and Universities; Injunctions § 11— injunction to restrain expenditure of public funds**

Injunction will not issue to restrain expenditure by State Education Assistance Authority of funds appropriated by the General Assembly where the Supreme Court has no assurance that the appropriation was not expended prior to the hearing and decision of the case on appeal.

APPEAL by plaintiff from *Bone, J.,* at the 31 March 1969 Civil Session of WAKE, the plaintiff's motion to docket the appeal in this Court prior to a determination by the Court of Appeals having been allowed.

This is an action for a mandatory injunction directing the defendants to cease certain activities, which the plaintiff alleges to be unconstitutional and otherwise unlawful, and nullifying all past transactions between the defendants and all others "to the end that the defendants and all who may have dealt with them may be restored to their original positions." The plaintiff also prayed for a temporary restraining order, which was not granted. He appeals from a judgment of nonsuit and dismissal of the action.

The plaintiff alleges that he is a taxpayer of the City of Raleigh, Wake County, the State and the United States. He also alleges that he is a stockholder in one or more corporations, which pay franchise taxes to the State, taxes upon property located within the State and

income taxes to the United States and which have issued interest bearing notes and bonds, that these securities are not exempt from taxation in North Carolina and that the rates of interest paid by such corporations thereon are higher than they would be if such interest were exempt from taxation.

The plaintiff alleges that he will sustain irreparable injury from the acts of which he complains unless the injunctive relief for which he prays is granted, but does not allege how he will be injured unless such injury be inherent in his status as taxpayer or as shareholder. The answer of each defendant denies that the plaintiff will sustain such injury and denies that the State Education Assistance Authority has been or is carrying on any activity which is unconstitutional or otherwise unlawful. Except for these denials the several answers admit the allegations of the complaint.

The complaint alleges in substance (numbering revised):

(1)   The Authority is a corporate body, created by Chapter 1180 of the Session Laws of 1965. By Chapter 1177 of the Session Laws of 1967, the General Assembly undertook "to vest in the Authority power to issue tax exempt revenue bonds *not pledging the credit of the State* (emphasis added) and to make available the proceeds of these bonds for financing loans to North Carolina students to enable them to obtain an education in an 'eligible institution'" as defined in Title 20 of the United States Code. The College Foundation, Inc., is a North Carolina non-profit corporation engaged in the business of making loans to North Carolina students for use in educational pursuits.

(2)   The Authority adopted a Resolution authorizing the issuance of bonds in the total amount of $3,000,000, a copy of which Resolution is attached to the complaint. (The said Resolution covers 74 printed pages in the record and sets forth in great detail the form of the bonds to be issued under it, the use to be made of the proceeds, and the bookkeeping and accounting procedure to be followed.) The Authority has issued and sold such bonds at a privately negotiated sale.

(3)   The Authority, the Foundation and the Wachovia Bank & Trust Company, which is the "fiscal agent" of the Authority, entered into a tripartite contract, a copy of which is attached to the complaint. (The contract likewise sets forth in detail the undertakings of the several parties concerning the use by the Authority of the proceeds of the said bonds to purchase from the Foundation notes, representing loans previously made by the Foundation to students, and concerning the collection of such notes and the handling

of funds, accounting and bookkeeping procedures, etc.). The proceeds of the bonds so issued have been used, pursuant to the said contract, for such purchase by the Authority from the Foundation of such student notes.

(4) Thereafter, the Authority adopted a further Resolution, a copy of which is attached to the complaint, authorizing its officers and employees to issue another series of bonds, also in the total amount of $3,000,000, the proceeds of which will be used "in making or buying student loans during the academic year 1969-1970."

(5) The General Assembly of 1967 appropriated from the general tax revenues of the State funds for use by the Authority in the performance "of its lawful functions" during the two years ending 30 June 1969. From the funds so appropriated the Authority has made expenditures for salaries and expenses of its employees and other "necessary office cost," including the expense of the Secretary of the Authority in traveling to New York for the purpose of executing the first series of bonds.

(6) "In expressing its intent to issue a further series of these bonds * * * the Authority has indicated that additional tax funds will be expended."

(7) Chapter 1177 of the Session Laws of 1967, pursuant to which the Authority has so acted, is unconstitutional in that it conflicts with Article V, § 3, Article I, § 7, Article I, § 8, and Article V, § 5, of the Constitution of North Carolina, and the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States. If the said Act of the General Assembly be deemed constitutional, the actions of the defendants are nevertheless unlawful because the tripartite contract and provisions of the bond resolution are in conflict with the said Act of the Legislature.

When the matter came on for a hearing in the superior court, a jury trial was waived and the matter was submitted to the court under an agreed statement of facts, setting forth, in substance, the facts alleged in the complaint and admitted in the answers.

The parties further stipulated in the superior court that eleven detailed questions are "the questions of law which arise upon the facts and which are to be determined."

The superior court found the facts to be as so stipulated and that these were "all of the facts that are competent for a determination of this controversy." Thereupon, the court set forth its conclusions of law as follows:

"(1)    That the agreed facts show that the General Assembly of North Carolina in the enactment of Chapter 1177, Session Laws of 1967, has acknowledged its and the State's responsibility to its citizens under the Constitution of North Carolina to further education of North Carolina students beyond the level of secondary education by making available funds through student loans to enable these students to pursue their education and by this pursuit to better prepare themselves for their lives as responsible North Carolina taxpaying Citizens and that Chapter 1177, Session Laws of 1967, is a permissible method of promoting such public purposes and constitutes a valid use of public funds for public purposes required by Section 3 of Article V and Section 17 of Article I of the North Carolina Constitution and Section 1 of the Fourteenth Amendment to the United States Constitution, and said Chapter 1177 does not authorize the use of public funds for other than a public purpose in violation of Section 3 of Article V or Section 17 of Article I of the North Carolina Constitution or Section 1 of the Fourteenth Amendment to the United States Constitution.

"(2)    Chapter 1177, Session Laws of 1967, does not authorize the lending of the credit of the State in violation of Section 4 of Article V of the North Carolina Constitution and does not authorize any entitlement to exclusive or separate emoluments or privileges in violation of Section 7 of Article I of the North Carolina Constitution.

"(3)    Chapter 1177, Session Laws of 1967, does not provide a delegation of legislative authority in violation of Section 8 of Article I of the North Carolina Constitution.

"(4)    Chapter 1177, Session Laws of 1967, does not authorize the creation of a debt in violation of Section 4 of Article V of the North Carolina Constitution.

"(5)    Chapter 1177, Session Laws of 1967, does not exempt property from taxation in violation of Section 5 of Article V of the North Carolina Constitution.

"(6)    Chapter 1177, Session Laws of 1967, is in every respect valid and constitutional in accordance with the Constitution of the United States and the Constitution of North Carolina.

"(7)    That State Education Assistance Authority and the members of its Board of Directors and Wachovia Bank & Trust Company, N.A., and College Foundation, Inc. have proceeded

in a lawful manner to carry out their duties and functions in execution of the powers of Chapter 1177, Session Laws of 1967, and their resolutions, contracts and actions taken in furtherance of their duties and as set forth in the Agreed Statement of Facts are in each and every respect lawful, and specifically that:

"(a)  The powers vested in the 'Fiscal Agent,' Wachovia Bank & Trust Company, N.A., under the bond resolution, are consistent with the legislative enactment.

"(b)  The powers vested in the fiscal agent under the bond resolution are not inconsistent with the powers of the State Treasurer vested under the Constitution of the State of North Carolina, and under the appropriate legislative enactments.

"(c)  The provisions of the bond resolution respecting the creation and administration of the 'loan fund' and the 'sinking fund' and the 'current expense account' and the flow of funds thereunder are not in conflict with the provisions of the enabling legislation.

"(d)  The tripartite contract is not in violation of Chapter 1177 and the Constitution of the State of North Carolina.

"(e)  The powers vested in College Foundation under the tripartite contract are not in conflict with Chapter 1177.

"(f)  The provisions of the bond resolution and tripartite contract by which bond funds were used to purchase existing student loans held by College Foundation, Inc. are legal and do provide for a lawful expenditure of said funds."

The superior court thereupon adjudged that the Authority is authorized and empowered to perform all of the acts set forth in Chapter 1177 of the Session Laws of 1967 in the manner in which it has proceeded to do so, and adjudged that the plaintiff be nonsuited and the action dismissed.

*Attorney General Morgan by Deputy Attorney General McGalliard for State Education Assistance Authority and the members of its Board of Directors.*

*Jordan, Morris & Hoke for Wachovia Bank & Trust Company, N.A., and College Foundation, Inc.*

*Bailey, Dixon & Wooten for plaintiff.*

LAKE, J.

[1]  The authority of this Court, in a proper case, to declare an act of the Legislature unconstitutional was clearly established in

*Bayard v. Singleton,* 1 N.C. 5, sixteen years prior to the comparable decision of the Supreme Court of the United States in *Marbury v. Madison,* 5 U.S. 137, 2 L. ed. 60. That authority does not arise from any inherent power of this Court to review acts of the General Assembly and to declare invalid those which this Court disapproves or, upon its own initiative, finds to be in conflict with the Constitution. This Court and the General Assembly are coordinate branches of the State government. Neither is the superior of the other.

**[2-4]**    The authority of this Court to declare an act of the Legislature unconstitutional arises from, and is an incident of, its duty to determine the respective rights and liabilities or duties of litigants in a controversy brought before it by the proper procedure. To do so, this Court, in the event of a conflict between two rules of law, must determine which is the superior rule and, therefore, the rule governing the rights and liabilities or duties of the parties to the controversy before the Court. If there is a conflict between a statute and the Constitution, this Court must determine the rights and liabilities or duties of the litigants before it in accordance with the Constitution, because the Constitution is the superior rule of law in that situation. *State v. Lueders,* 214 N.C. 558, 200 S.E. 22.

**[5]**    When, in order to determine a controversy, properly before it, in accordance with the controlling rule of law, it becomes necessary for this Court to pass upon the constitutional validity of a legislative provision, it will not anticipate other questions of constitutional law not necessary to the decision of the precise controversy presented in the litigation before it. *Person v. Doughton,* 186 N.C. 723, 120 S.E. 481; *Commissioners v. State Treasurer,* 174 N.C. 141, 149, 93 S.E. 482, 2 A.L.R. 726.

**[6, 7]**    Again, this Court will not determine the constitutionality of a legislative provision in a proceeding in which there is no "actual antagonistic interest in the parties." *Bizzell v. Insurance Co.,* 248 N.C. 294, 103 S.E. 2d 348. "Only one who is in immediate danger of sustaining a direct injury from legislative action may assail the validity of such action. It is not sufficient that he has merely a general interest common to all members of the public." *Charles Stores v. Tucker,* 263 N.C. 710, 140 S.E. 2d 370. Accord: *Surplus Co. v. Pleasants,* 263 N.C. 587, 139 S.E. 2d 892; *Watkins v. Wilson,* 255 N.C. 510, 121 S.E. 2d 861, cert. den. and app. dism., 370 U.S. 46; *Fox v. Commissioners of Durham,* 244 N.C. 497, 94 S.E. 2d 482; *Turner v. Reidsville,* 224 N.C. 42, 29 S.E. 2d 211.

**[8, 9]**    A taxpayer, as such, does not have standing to attack the constitutionality of any and all legislation. *Wynn v. Trustees,* 255

N.C. 594, 122 S.E. 2d 404; *Carringer v. Alverson,* 254 N.C. 204, 118 S.E. 2d 408; *Fox v. Commissioners of Durham, supra; Turner v. Reidsville, supra.* A taxpayer, as such, may challenge, by suit for injunction, the constitutionality of a tax levied, or proposed to be levied, upon him for an illegal or unauthorized purpose. See: *Wynn v. Trustees, supra; Barbec v. Comrs. of Wake,* 210 N.C. 717, 188 S.E. 314. The constitutionality of a provision of a statute may not, however, be tested by a suit for injunction unless the plaintiff alleges, and shows, that the carrying out of the provision he challenges will cause him to sustain, personally, a direct and irreparable injury, apart from his general interest as a citizen in good government in accordance with the provisions of the Constitution. *D & W, Inc., v. Charlotte,* 268 N.C. 577, 151 S.E. 2d 241; *Watkins v. Wilson, supra; Fox v. Commissioners of Durham, supra; Sprunt v. Comrs. of New Hanover,* 208 N.C. 695, 182 S.E. 655; *Newman v. Comrs. of Vance,* 208 N.C. 675, 182 S.E. 453.

[10] The fact that both parties to an action, as in the present case, desire the determination of the constitutionality of an entire act of the Legislature and stipulate that certain questions, leading to such determination, are presented by the action for the determination of the Court is not binding upon the Court. Such stipulation does not require, or authorize, the Court to pass upon the constitutional questions not necessary to the determination of the right of the party who denies the validity of the legislation. *Carringer v. Alverson, supra.*

[11] The plaintiff's allegation that he is a stockholder, or otherwise beneficially interested, in one or more corporations which pay taxes within the State, does not give him any greater right to attack the validity of any provision of the legislation in question than his own status as taxpayer would do. His allegations that these corporations have issued notes and bonds bearing interest, which are not exempt from taxation, and that the rates of interest on such notes and bonds are higher than they would be if such securities were so exempt do not add to his standing to attack the constitutionality of the legislation of which he complains. He does not allege, and there is nothing in the record to indicate, that if the legislation which he attacks were declared unconstitutional in its entirety the interest rates upon the notes and bonds of such corporations would be lower than they now are. Thus, in the present proceeding, we may not properly determine the constitutionality of any provision of the statutes attacked by the plaintiff, G.S. 116-209.1 to 116-209.15, inclusive, unless such provision directly injures the plaintiff as taxpayer.

The plaintiff does not attack the validity of any portion of the Act of 1965 (G.S. 116-201 to G.S. 116-209), to which only minor amendments, not of consequence in this litigation, were made by the General Assembly of 1967. By the Act of 1965, the Authority was created, declared to be a political subdivision of the State and given certain powers, including the power to accept from any federal or private agency or from any person grants of money, and to use such funds for the purchase of obligations representing loans made to students in institutions of higher education for the purpose of enabling them to obtain an education. The validity of any act of the Authority, pursuant to G.S. 116-201 to G.S. 116-209, is not before us in this action.

The plaintiff attacks the validity of Chapter 1177 of the Session Laws of 1967 (G.S. 116-209.1 to G.S. 116-209.15). As the basis for such attack, he complains of the following actions and proposed actions:

1. In the 1967 Act, the General Assembly undertook to confer upon the Authority power to issue "tax exempt revenue bonds *not pledging the credit of the State.*" (Emphasis added.)

2. The General Assembly undertook to make available (or to confer upon the Authority the power to make available) the proceeds of "these bonds" for financing loans to North Carolina students to enable them to obtain an education in an "eligible institution," as that term is defined in Title 20 of the United States Code.

3. The Authority adopted a resolution authorizing the issuance of $3,000,000 in five percent revenue bonds "pursuant to the aforesaid Act," a copy of which resolution is made a part of the complaint.

4. The Authority entered into "certain contractual relationships" for the sale of the said bonds.

5. The Authority accepted an offer made on behalf of "certain North Carolina banks" for the purchase of the said bonds and, by resolution, authorized their sale to such banks.

6. The Authority, by resolution, authorized the execution in its behalf of a tripartite contract between it, Wachovia Bank & Trust Company and College Foundation, Inc., which contract was executed, and a copy of which is made a part of the complaint.

7. The Authority issued the said bonds and sold them in accordance with the said contracts.

8. The proceeds from the sale of the said bonds "have been

used and expended" as prescribed in these contracts "except for certain funds which are still on hand."

9. The Wachovia Bank & Trust Company, as fiscal agent for the Authority, "has expended bond proceeds for the purchase of student loans."

10. The Wachovia Bank & Trust Company, as fiscal agent for the Authority, "has expended bond proceeds * * * for various items of expense."

11. The Wachovia Bank & Trust Company, as fiscal agent for the Authority, "is collecting student loan payments" from College Foundation, Inc., pursuant to the above mentioned bond resolution and contracts.

12. The Wachovia Bank & Trust Company, as fiscal agent for the Authority, "has paid" interest to bondholders as provided in the said bond resolution.

13. The Wachovia Bank & Trust Company, as fiscal agent for the Authority, "has allocated and separated bond funds and proceeds in accordance with said bond resolution, contract and agreement."

14. The Authority has, by resolution, authorized its officers and employees to proceed with steps for the issuance of "an additional series of bonds in the amount of $3,000,000 pursuant to the aforesaid bond resolution" and is "threatening" to issue such bonds "under said resolution for use and expenditure in making or buying student loans during the academic year of 1969-1970."

15. "[I]n so doing [the Authority] will cause to be expended tax revenues of the State of North Carolina in the manner set forth in Paragraph XIV of this complaint [Items 16 through 19, below]."

16. The General Assembly of 1967 appropriated funds from the general tax revenues, paid by the plaintiff and other taxpayers, for use by the Authority "in the performance of its *lawful functions* during the period from July 1, 1967, through June 30, 1969." (Emphasis added.)

17. From these appropriated funds there "have been, within the provisions of the applicable budget laws and regulations of the State of North Carolina, made available to the Authority" funds for salaries, per diem allowances and expenses of directors and employees of the Authority and "for other necessary office costs."

18. "[T]he Authority has used monies so appropriated in furtherance of the issuance by the Authority" of the first $3,000,000 in

bonds, including payment of expenses of its Secretary incurred in traveling to New York on October 3, 1968 for the purpose of executing such bonds.

19. "[I]n expressing its intent to issue a further series of these bonds as was expressed in its resolution of February 28, 1969, the Authority has indicated that additional tax funds will be expended unless the Court prevents this from taking place by granting the relief herein sought," which expenditures of tax funds will result in irreparable loss to the State and to its taxpayers, including the plaintiff.

[12]    The plaintiff alleges that the statute vests in the Authority power to issue only bonds which do not pledge the credit of the State. G.S. 116-209.12 expressly provides: "Bonds issued under the provisions of this act shall not be deemed to constitute a debt, liability or obligation of the State or of any political subdivision thereof or a pledge of the faith and credit of the State or of any such political subdivision, but shall be payable solely from the revenues and other funds provided therefor. Each bond issued under this act shall contain on the face thereof a statement to the effect that * * * neither the faith and credit nor the taxing power of the State or of any political subdivision thereof is pledged to the payment of the principal of or the interest on such bonds." The form of the bonds is set forth in the resolution attached to the complaint and provides that the bond is payable "solely from the special fund provided therefor as hereinafter set forth." It further provides that the bond shall not be deemed to constitute a debt or obligation of the State or of any political subdivision thereof and "neither the faith and credit nor the taxing power of the State of North Carolina or of any political subdivision thereof is pledged to the payment of the principal of or the interest on this bond."

It is necessarily true that the plaintiff, as taxpayer, can suffer no injury from the issuance of the bonds of which he complains and has no interest therein, except his general interest as a member of the public in good government pursuant to the Constitution. It is equally apparent that this is his only interest in the care and use of the proceeds of the bonds by the Authority and its fiscal agent and in the use and handling of funds received by the Authority, or for its benefit, from the Federal government or from private sources.

Consequently, provisions of the bond resolution and of the contracts of which the plaintiff complains, with reference to the care, allocation, handling and use of the proceeds of the bonds threaten no injury to the plaintiff in his status as taxpayer. The same is true

with reference to the provisions of the tripartite contract concerning the services to be rendered by College Foundation, Inc., in the collection from students of payments upon their notes or other obligations. The same is true of each of the acts of the fiscal agent for the Authority of which the plaintiff complains. In these respects there is no distinction between the series of bonds which the Authority is alleged to have issued prior to the institution of this action and the series of bonds which it is alleged to be "threatening to issue."

[13]  It being alleged that the appropriation of funds from the "general tax revenues" of the State was for use by the Authority "in the performance of its lawful functions" and the Authority having been established by statutes, not attacked by the plaintiff, which statutes purport to confer upon it authority to perform certain functions, the appropriation, as such, is not subject to attack by the plaintiff in this action.

[14]  The only specific use of funds, so appropriated from tax revenues, of which the plaintiff complains is the expenditure for the travel expenses of the Secretary of the Authority on October 3, 1968. Assuming, without deciding, that such expenditure was an unlawful use of appropriated funds, it was an accomplished fact prior to the institution of this action and cannot be prevented or redressed by the issuance of the injunction prayed for. *Jackson v. Jernigan,* 216 N.C. 401, 5 S.E. 2d 143.

[15]  The general allegation that, by expressing its intent to issue a further series of bonds, the Authority has indicated that "additional tax funds will be expended" unless enjoined by this Court is not sufficient basis for such relief. This allegation is consistent with a contemplated use of funds appropriated from tax revenues for "lawful functions" of the Authority, such as the payment of salaries and expenses of employees engaged in the performance of functions authorized by G.S. 116-201 to G.S. 116-209.

[16]  Thus, the plaintiff has not alleged facts showing, and the stipulated facts do not show, that any contemplated or threatened use of funds or other activity of the defendants will, if accomplished, result in any injury to the plaintiff, as a taxpayer or as a shareholder of any corporation. Consequently, the constitutional questions which he has sought to raise in this action are not before us and we express no opinion with reference thereto.

The plaintiff further alleges that the actions and proposed actions of the defendants, of which he complains as above set forth, are in conflict with the provisions of the Act of 1967 (G.S. 116-209.1

to G.S. 116-209.15), assuming the constitutionality of that Act, in the following respects:

1. The powers conferred upon the fiscal agent by the bond resolution are not consistent with these statutes in that the function of the fiscal agent under the resolution is that of a trustee.

2. The powers vested in the fiscal agent by the bond resolution are inconsistent with the constitutional and statutory powers of the State Treasurer, the complaint not specifying the nature of the alleged conflict.

3. The provisions of the bond resolution with reference to the handling of funds and their allocation to specified accounts are in conflict with the provisions of these statutes, the complaint not specifying the nature of the conflict.

4. The tripartite contract is in conflict with the statutes, the complaint not specifying the nature of the alleged conflict.

5. The powers vested in College Foundation, Inc., by the tripartite contract are in conflict with the statutes, the complaint not specifying the nature of the alleged conflict.

6. The use of proceeds of the bonds to purchase existing student loans already held by College Foundation, Inc., is an unlawful expenditure of such funds for the reason that such purchase did not provide additional loan funds for students and thus such use or proposed use of proceeds of the bonds is not consistent with the purposes of the statutes.

If each of these allegations be true, as to which we express no opinion, the plaintiff, in his capacity as taxpayer or in his capacity as the holder of corporate stock, has suffered no injury and will suffer no injury by the actions or proposed actions of which he complains. He is, therefore, not entitled to injunctive relief on the basis of these allegations.

[17, 18] With reference to the alleged uses and proposed use of funds appropriated by the General Assembly from the general funds of the State for use by the Authority, we note that the only appropriation mentioned in the complaint was for the two-year period ending 30 June 1969. Appropriated funds not used prior to that date would revert automatically to the general fund. Furthermore, since the superior court denied the prayer for injunctive relief and dismissed the action on 31 March 1969, we have no assurance in the record that the entire amount of such appropriation was not expended prior to the hearing and decision of the appeal by this Court. Ob-

viously, an injunction will not issue to prevent that which has already been done. *Jackson v. Jernigan, supra.* The mandatory injunction prayed for obviously could not be issued in this action so as to require employees of the Authority and others, to whom the Authority has paid salaries and other items, to refund such amounts, such persons not being parties hereto.

There was no error in the denial by the superior court of the relief sought by the plaintiff or in its decree that the plaintiff be nonsuited and that this action be dismissed. There was, however, error in that portion of the judgment of the superior court adjudging that the Authority "is lawfully authorized and empowered to perform all of the acts set forth in Chapter 1177, Session Laws of 1967, and in the manner in which the findings of fact disclosed that it has proceeded to do this." These questions were not properly before the superior court. For the same reason, there was error in the inclusion in the judgment of the several conclusions of-law stated therein and quoted above in the statement of the facts. The erroneous portion of the decree and these conclusions of law are, therefore, stricken from the judgment. As so modified, the judgment of the superior court is affirmed.

Modified and affirmed.