DELMA BLINSON, JERRY R. JOHNSON, KELLIENE FISHER, DONALD R. REID, BRIAN GOSSAGE, WILFORD R. DOWE, AND KENT MISEGADES, PLAINTIFFS V. STATE OF NORTH CAROLINA; JAMES T. FAIN, III, SECRETARY OF THE N.C. DEPT. OF COMMERCE, IN HIS OFFICIAL CAPACITY; CITY OF WINSTON-SALEM, NORTH CAROLINA AND ALLEN JOINES, MAYOR OF WINSTON-SALEM, IN HIS OFFICIAL CAPACITY; FORSYTH COUNTY, NORTH CAROLINA AND GLORIA D. WHISENHUNT, CHAIRPERSON OF THE BOARD OF COMMISSIONERS OF FORSYTH COUNTY, IN HER OFFICIAL CAPACITY; THE MILLENNIUM FUND; WINSTON-SALEM BUSINESS, INC.; THE WINSTON-SALEM ALLIANCE; AND DELL, INC., DEFENDANTS

No. COA06-1258

(Filed 16 October 2007)

**1. Constitutional Law— standing to challenge business incentives—increased tax burden**

Plaintiffs' status as taxpayers who suffered an increased tax burden from incentives given for locating a computer manufacturing facility in North Carolina was sufficient to provide standing for claims under the Public Purpose and Exclusive Emoluments Clauses of the North Carolina Constitution.

**2. Constitutional Law— standing to challenge business incentives—no showing of membership in prejudiced class**

Plaintiffs lacked standing to bring claims under the Uniformity of Taxation Clause of the North Carolina Constitution and the Dormant Commerce Clause of the United States Constitution challenging incentives given for locating a computer manufacturing facility in North Carolina. Plaintiffs have not demonstrated that they belong to a class prejudiced by the operation of the legislation.

**3. Constitutional Law— business incentives—Public Purpose Clauses—failure to state a claim**

The trial court did not err by concluding that plaintiffs failed to state a claim for relief under the Public Purpose Clauses of the North Carolina Constitution in an action opposing incentives given to a computer company for locating a manufacturing facility in North Carolina. Plaintiffs' complaint focused exclusively on the purported benefits provided to the company and contained no allegations that the legislative bodies were not acting with a motivation to increase the tax base or alleviate unemployment and fiscal distress.

**4. Constitutional Law— business incentives—Exclusive Emoluments**

The trial court did not err by concluding that plaintiffs failed to state a claim for relief under the Exclusive Emoluments Clause of the North Carolina Constitution in an action challenging incentives given to a computer company to locate a manufacturing facility in North Carolina. The incentives and subsidies in this case are intended to promote the general economic welfare of the communities involved rather than to solely benefit the company, and do not amount to exclusive emoluments.

Appeal by plaintiffs from order entered 12 May 2006 by Judge Robert H. Hobgood in Wake County Superior Court. Heard in the Court of Appeals 25 April 2007.

*North Carolina Institute for Constitutional Law, by Robert F. Orr, Pamela B. Cashwell, and Jeanette Doran Brooks, for plaintiffs-appellants.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Norma S. Harrell and Assistant Solicitor General John F. Maddrey, for State defendants-appellees.*

*Kilpatrick Stockton LLP, by J. Robert Elster, Adam H. Charnes, and Stephen T. Inman; Winston-Salem City Attorney Ronald G. Seeber; and Forsyth County Attorney Davida W. Martin; for defendants-appellees City of Winston-Salem, Allen Joines, Forsyth County, Gloria D. Whisenhunt, The Millenium Fund, Winston-Salem Business, Inc., and The Winston-Salem Alliance.*

*Womble Carlyle Sandridge & Rice, PLLC, by Burley B. Mitchell, Jr., Pressly M. Millen, Sean E. Andrussier, and Melody Ray-Welborn; and Jones Day, by Michael A. Carvin; for defendant-appellee Dell, Inc.*

GEER, Judge.

"Today, every state provides tax and other economic incentives as an inducement to local industrial location and expansion." Walter Hellerstein & Dan T. Coenen, *Commerce Clause Restraints on State Business Development Incentives*, 81 Cornell L. Rev. 789, 790 (1996). In a reprise of *Maready v. City of Winston-Salem*, 342 N.C. 708, 467 S.E.2d 615 (1996), plaintiffs challenge incentives—provided by the

General Assembly and defendants City of Winston-Salem and Forsyth County—that benefitted defendant Dell, Inc. when it constructed a computer manufacturing facility in Forsyth County.

Whether these incentives are lawful under the North Carolina Constitution was settled by *Maready* and this Court's subsequent decision in *Peacock v. Shinn*, 139 N.C. App. 487, 533 S.E.2d 842, *appeal dismissed and disc. review denied*, 353 N.C. 267, 546 S.E.2d 110 (2000). We are not free to revisit the reasoning or holdings of those opinions. To the extent plaintiffs question the wisdom of the incentives and whether they will in fact provide the public benefit promised, they have sought relief in the wrong forum. Once the Supreme Court held in *Maready* that economic incentives to recruit business to North Carolina involve a proper public purpose, it became the role of the General Assembly and the Executive Branch— and not the courts—to determine whether such incentives are sound public policy. We are bound by *Maready* and *Peacock* and, therefore, affirm the trial court's decision dismissing plaintiffs' complaint.

Facts

The facts of this case are largely undisputed. In November 2004, the Legislature amended Articles 3A, 3G, 5, and 9 of Chapter 105 of the North Carolina General Statutes to enhance existing tax incentives and to provide a tax credit for certain major computer manufacturing facilities (the "Computer Legislation"). 2004 N.C. Sess. Laws 204. The General Assembly made the following findings regarding its purpose in enacting the Computer Legislation:

(1) It is the policy of the State to stimulate economic activity and to create and maintain sustainable jobs for the citizens of the State in strategically important industries.

(2) Both short-term and long-term economic trends at the regional, State, national, and international levels have made the successful implementation of the State's economic development policies and programs both more critical and more challenging; in particular, national trade policies and the resulting impact on domestic competitiveness have made the retention of manufacturing jobs more difficult at a time of transition in the national, State, and regional economics.

(3) Manufacturing employment in the State has been disproportionately affected by trade policies and global economic

trends, resulting in the loss of jobs by many in the State's capable industrial workforce.

(4) Computer manufacturing and distribution has been an important industry for the State and has prospered in this State due to our strong and productive workforce, focused worker training programs, research capabilities, tradition of innovation, and concentration of companies.

(5) The computer manufacturing and distribution industry will remain a vital part of the world's, nation's, and State's future economy as society becomes more dependent on advanced computer technology.

(6) It is the intent of the State to encourage the sustainability of this industry cluster in this State and to encourage the maintenance and growth of computer manufacturing and distribution employment in the State through tax policies, investments in training capacity, and other policies and programs.

(7) The State must be an innovative leader in creating policies and programs that encourage the maintenance of manufacturing jobs in this country and State and in the development of efforts to support manufacturers during the transitional period as they adapt to rapidly changing global conditions.

2004 N.C. Sess. Laws 204, § 1.

Following these amendments, Dell announced plans to build a major computer manufacturing facility in the Piedmont Triad region. In December 2004, the Forsyth County Board of Commissioners passed a resolution (the "County Resolution") authorizing Forsyth County's participation in an economic development incentives project to assist defendant Dell and defendant Winston-Salem Business, Inc. ("WSBI") with the location of Dell's manufacturing facility in the Alliance Science and Technology Park in Forsyth County. Subsequently, the City Council of Winston-Salem also passed a variety of resolutions (the "City Resolutions") pertaining to the project, addressing matters such as zoning, financial assistance, annexation, and the sale of land to Dell.

Defendants Dell, the City of Winston-Salem, Forsyth County, WSBI, The Millennium Fund, and the Winston-Salem Alliance entered into an agreement on 26 July 2005 (the "Agreement") setting out Dell's plans to locate its facility in the Alliance Science and Technology

Park and the various local economic development incentives that would be provided. Like the Computer Legislation, the Agreement recited various public benefits expected to flow from the incentives being provided to Dell, including:

A. The Community is vitally interested in the economic welfare of its citizens and the creation and maintenance of sustainable jobs for its citizens in strategically important industries and therefore wishes to provide the necessary conditions to stimulate investment in the local economy and promote business, resulting in the creation of a substantial number of jobs at competitive wages, and to encourage economic growth and development opportunities which the Community has determined will be made possible pursuant to the Project (as defined below).

B. [Dell] is engaged in state-of-the-art computer manufacturing and distribution and is a premier provider of products and services required for customers worldwide to build their information-technology and Internet infrastructures. The Company is the only major manufacturer of computers that has chosen to keep its manufacturing operations within the United States, and has been able to do so in large part based upon its reliance upon a unique supply chain system under which key suppliers, partners and service vendors . . . are located in the immediate vicinity of [Dell's] manufacturing operations, which enables just-in-time, custom-configured production.

C. [Dell] has proposed to make a capital investment of at least $100 million at the Site in the form of a computer manufacturing and distribution facility. . . . [Dell] expects that the Project will include taxable buildings and equipment having an initial aggregate taxable value of at least $100 million and expects to create at least 1,700 local Qualified Jobs . . . at an average wage of $28,000 per year.

D. The Community recognizes that the Project will bring direct and indirect benefits to the City and the County, including job creation, economic diversification and stimulus and training in technology, computer assembly and manufacturing skills, and has offered economic development incentives . . . to induce [Dell] to locate the Project at the Site.

E. [Dell] fully intends to establish, through the Project, an important presence in the City and the County by employing a large number of local employees and making a substantial investment in the Project and in the training and development of those employees. . . .

On 23 June 2005, while Dell's manufacturing facility was being built, the seven plaintiffs filed a 22-count complaint in Wake County Superior Court, asserting that the Computer Legislation, the County Resolution, the City Resolutions, and the Agreement violated various provisions of the federal and state constitutions. Plaintiffs filed an amended complaint on 9 September 2005.

In October 2005, defendants filed motions to dismiss under N.C.R. Civ. P. 12(b)(1) for lack of standing and under N.C.R. Civ. P. 12(b)(6) for failure to state a claim for relief. Defendants' motions were heard by Judge Robert H. Hobgood and on 12 May 2006, the trial court entered an order dismissing all of plaintiffs' claims, concluding that plaintiffs lacked standing and had failed to state a claim for relief. Plaintiffs timely appealed to this Court.

## Discussion

On appeal, plaintiffs have pursued only five of the claims asserted in their amended complaint. They argue that the trial court erred in dismissing their claims that the disputed incentives and subsidies: (1) violated the "public purpose" doctrine embodied in N.C. Const. art. V, § 2(1) & (7); (2) were "exclusive emoluments" in violation of N.C. Const. art. I, § 32; (3) were unauthorized local development under N.C. Gen. Stat. § 158-7.1 (2005); (4) were not uniformly applicable as required by N.C. Const. art. V, § 2(2) & (3); and (5) discriminated against interstate commerce in violation of the Dormant Commerce Clause embodied in U.S. Const. art. I, § 8, cl. 3. We must determine whether plaintiffs had standing to bring each claim and whether those counts of their amended complaint assert a claim for relief.

## I. Standing

[1] The trial court concluded that plaintiffs lacked standing to bring each of the above claims. As the party invoking jurisdiction, plaintiffs have the burden of proving the elements of standing. *Coker v. DaimlerChrysler Corp.*, 172 N.C. App. 386, 391, 617 S.E.2d 306, 310 (2005), *aff'd per curiam*, 360 N.C. 398, 627 S.E.2d 461 (2006). "If a party does not have standing to bring a claim, a court has no subject matter jurisdiction to hear the claim." *Estate of Apple v. Commercial*

*Courier Express, Inc.*, 168 N.C. App. 175, 177, 607 S.E.2d 14, 16, *disc. review denied*, 359 N.C. 632, 613 S.E.2d 688 (2005). Consequently, standing is properly challenged by a Rule 12(b)(1) motion to dismiss. *Peninsula Prop. Owners Ass'n v. Crescent Res., LLC*, 171 N.C. App. 89, 93, 614 S.E.2d 351, 354, *appeal dismissed and disc. review denied*, 360 N.C. 177, 626 S.E.2d 648 (2005). We review de novo a trial court's decision to dismiss a case under N.C.R. Civ. P. 12(b)(1) for lack of standing. *Fuller v. Easley*, 145 N.C. App. 391, 395, 553 S.E.2d 43, 46 (2001).

Plaintiffs contend that their status as taxpayers, suffering an increased tax burden as a result of the Dell incentives, is sufficient to provide plaintiffs with standing. Defendants concede that, under our Supreme Court's recent decision in *Goldston v. State*, 361 N.C. 26, 637 S.E.2d 876 (2006), plaintiffs have standing to bring their claims under the Public Purpose and Exclusive Emoluments Clauses of the North Carolina Constitution. We agree and hold that the trial court erred in dismissing those claims for lack of standing.

[2] Defendants maintain that plaintiffs nonetheless lack standing to bring their discrimination-based claims under the Uniformity of Taxation Clauses of the North Carolina Constitution and the Dormant Commerce Clause of the United States Constitution. As a general rule, "[a] taxpayer, as such, does not have standing to attack the constitutionality of any and all legislation." *Nicholson v. State Educ. Assistance Auth.*, 275 N.C. 439, 447, 168 S.E.2d 401, 406 (1969). In the context of constitutional issues, " '[t]he gist of the question of standing is whether the party seeking relief has alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.' " *Goldston*, 361 N.C. at 30, 637 S.E.2d at 879 (alterations in original) (internal quotation marks omitted) (quoting *Stanley v. Dep't of Conservation & Dev.*, 284 N.C. 15, 28, 199 S.E.2d 641, 650 (1973)).

Plaintiffs' claims that the Computer Legislation violates the Uniformity of Taxation Clauses and the Federal Dormant Commerce Clause do not relate to any injury plaintiffs themselves have sustained. Rather, plaintiffs' claims under these provisions pertain only to a theoretical injury that might be suffered by other businesses that may attempt to compete with Dell. In other words, plaintiffs lack any " 'personal stake in the outcome of the controversy' " with respect to

their challenges under these provisions. *Id.* (quoting *Stanley*, 284 N.C. at 28, 199 S.E.2d at 650).

This Court has previously concluded that in order to establish standing to challenge a statute under the Uniformity of Taxation Clauses, plaintiffs must demonstrate that they " 'belong[] to the class which is prejudiced by the statute.' " *In re Appeal of Barbour*, 112 N.C. App. 368, 373, 436 S.E.2d 169, 173 (1993) (quoting *In re Appeal of Martin*, 286 N.C. 66, 75, 209 S.E.2d 766, 773 (1974)). Similarly, it is well-established under federal law that claims under the Dormant Commerce Clause require plaintiffs to demonstrate that they are prejudiced by the operation of the challenged statute in order to establish standing. *See, e.g.*, *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 286, 136 L. Ed. 2d 761, 772, 117 S. Ct. 811, 818 (1997) (holding that, to establish standing to challenge state tax law under Dormant Commerce Clause, plaintiffs must demonstrate "cognizable injury").

Plaintiffs have not demonstrated that they belong to a class that is prejudiced by the operation of the Computer Legislation. Accordingly, we hold the trial court properly concluded that plaintiffs lack standing to bring their claims under both the Uniformity of Taxation Clauses and the Dormant Commerce Clause.

II. Motions to Dismiss

We next address whether the trial court erred in dismissing, pursuant to Rule 12(b)(6), plaintiffs' claims pursuant to the Public Purpose and Exclusive Emoluments Clauses of the North Carolina Constitution. When a party files a motion to dismiss pursuant to Rule 12(b)(6), the question for the court is whether the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not. *Grant Constr. Co. v. McRae*, 146 N.C. App. 370, 373, 553 S.E.2d 89, 91 (2001). The appellate court conducts a de novo review of the pleadings to determine their legal sufficiency and decide whether the trial court's ruling on the motion to dismiss was erroneous. *Whitehurst v. Hurst Built, Inc.*, 156 N.C. App. 650, 653, 577 S.E.2d 168, 170 (2003).

A. The Public Purpose Clauses

[3] In asserting their claims that the Computer Legislation and the local incentives lacked a public purpose, plaintiffs rely upon two clauses of the North Carolina Constitution. First, N.C. Const. art. V, § 2(1) provides that "[t]he power of taxation shall be exercised in a

just and equitable manner, *for public purposes only*, and shall never be surrendered, suspended, or contracted away." (Emphasis added.) Second, N.C. Const. art. V, § 2(7) provides that "[t]he General Assembly may enact laws whereby the State, any county, city or town, and any other public corporation may contract with and appropriate money to any person, association, or corporation for the accomplishment *of public purposes only*." (Emphasis added.)

With respect to determining whether legislation serves a public purpose within the meaning of these two constitutional clauses:

> the presumption favors constitutionality. Reasonable doubt must be resolved in favor of the validity of the act. The Constitution restricts powers, and powers not surrendered inhere in the people to be exercised through their representatives in the General Assembly; therefore, so long as an act is not forbidden, its wisdom and expediency are for legislative, not judicial, decision.

*Maready*, 342 N.C. at 714, 467 S.E.2d at 619 (internal citations omitted). Nevertheless, although legislative declarations are accorded great weight, the ultimate responsibility for the determination of what constitutes a public purpose rests with the judiciary. *Id.* at 716, 467 S.E.2d at 620. In fulfilling that responsibility, we may consider the text of the Computer Legislation, the County and City Resolutions, and the Agreement, even though we are reviewing a Rule 12(b)(6) order of dismissal, because plaintiffs attached copies of these documents to their amended complaint. *See Peacock*, 139 N.C. App. at 494, 533 S.E.2d at 847.

Any consideration of the constitutionality of economic development incentives must start with the Supreme Court's decision in *Maready*. The lawsuit in *Maready* "challenge[d] twenty-four economic development incentive projects entered into by the City [of Winston-Salem] or [Forsyth] County pursuant to N.C.G.S. § 158-7.1." 342 N.C. at 713, 467 S.E.2d at 618-19. The disputed expenditures included several million dollars given directly to private companies, primarily in the form of reimbursement for "on-the-job training, site preparation, facility upgrading, and parking." *Id.*, 467 S.E.2d at 619. In addition, the expenditures included road construction, financing of land purchases, and even spousal relocation assistance. *Id.* at 737, 467 S.E.2d at 633 (Orr, J., dissenting).

To determine whether N.C. Gen. Stat. § 158-7.1, which authorized these local incentives, violated the Public Purpose Clauses, the

*Maready* Court applied the test set out in *Madison Cablevision, Inc. v. City of Morganton*, 325 N.C. 634, 386 S.E.2d 200 (1989). *Madison Cablevision* established two guiding principles for determining whether a particular undertaking was done for a public purpose: "(1) it involves a reasonable connection with the convenience and necessity of the particular municipality; and (2) the activity benefits the public generally, as opposed to special interests or persons." *Id.* at 646, 386 S.E.2d at 207 (internal citation omitted).

*Maready* concluded that economic development incentives authorized by N.C. Gen. Stat. § 158-7.1 satisfied the first prong of the test because "[e]conomic development has long been recognized as a proper governmental function." 342 N.C. at 723, 467 S.E.2d at 624. With respect to the second prong, *Maready* observed that "an expenditure does not lose its public purpose merely because it involves a private actor. *Generally, if an act will promote the welfare of a state or a local government and its citizens, it is for a public purpose.*" *Id.* at 724, 467 S.E.2d at 625 (emphasis added).

Applying this test, the Court held that, under *Madison Cablevision*, "section 158-7.1 clearly serves a public purpose." *Id.* Specifically, the Court concluded that:

> The public advantages are not indirect, remote, or incidental; rather, they are directly aimed at furthering the general economic welfare of the people of the communities affected. While private actors will necessarily benefit from the expenditures authorized, such benefit is merely incidental. It results from the local government's efforts to better serve the interests of its people.

*Id.* at 725, 467 S.E.2d at 625-26. The Court explained further:

> The General Assembly thus could determine that legislation such as N.C.G.S. § 158-7.1, which is intended to alleviate conditions of unemployment and fiscal distress and to increase the local tax base, serves the public interest. New and expanded industries in communities within North Carolina provide work and economic opportunity for those who otherwise might not have it. This, in turn, creates a broader tax base from which the State and its local governments can draw funding for other programs that benefit the general health, safety, and welfare of their citizens. The potential impetus to economic development, which might otherwise be lost to other states, likewise serves the public interest.

*Id.* at 727, 467 S.E.2d at 627. The Court then concluded: "We therefore hold that N.C.G.S. § 158-7.1, *which permits the expenditure of public moneys for economic development incentive programs,* does not violate the public purpose clause of the North Carolina Constitution." *Maready,* 342 N.C. at 727, 467 S.E.2d at 67 (emphasis added). We can find no meaningful distinction between the present case and *Maready.*

With respect to the County and City Resolutions and the Agreement, the incentives and subsidies embodied therein were adopted by Winston-Salem and Forsyth County pursuant to N.C. Gen. Stat. § 158-7.1. Plaintiffs have made no attempt to demonstrate how the incentives in this case are legally different from the 24 local economic incentive packages offered in *Maready* pursuant to § 158-7.1.[1] Although plaintiffs argue that *Maready* decided only the facial constitutionality of N.C. Gen. Stat. § 158-7.1, they provide no theory under which economic development incentives properly adopted under § 158-7.1—a statute held to be consistent with the Public Purpose Clauses when it authorized local government to adopt such incentive programs—would nonetheless be unconstitutional as violative of the Public Purpose Clauses. In the absence of a showing of some distinction between the incentives in this case and the incentives in the *Maready* case, we hold that the trial court properly concluded that the County and City Resolutions and the Agreement did not violate the Public Purpose Clauses.

With respect to the Computer Legislation, we first note that *Maready* explicitly stated that, consistent with the Public Purpose Clauses, "[t]he General Assembly may provide for, *inter alia,* roads, schools, housing, health care, transportation, and occupational training. It would be anomalous to now hold that a government which

---

1. Plaintiffs did assert a claim in their amended complaint that the local incentives in this case violated N.C. Gen. Stat. § 158-7.1, and they purport to pursue that claim on appeal. With respect to that claim, however, plaintiffs' amended complaint states only that the "tax credits, direct grants, and other subsidies authorized and/or granted to Dell by the City, the County, the State of North Carolina, and the agents thereof are not authorized by . . . N.C. Gen. Stat. § 158-7.1." Plaintiffs' amended complaint fails to allege any specific facts that would indicate a violation of N.C. Gen. Stat. § 158-7.1. Moreover, plaintiffs' appellate brief neither directs this Court to what specific aspects of the incentives they contend run afoul of the statute nor cites any authority in support of this claim. "Assignments of error not set out in the appellant's brief, *or in support of which no reason or argument is stated or authority cited,* will be taken as abandoned." N.C.R. App. P. 28(b)(6) (emphasis added). We, therefore, deem plaintiffs' contentions under N.C. Gen. Stat. § 158-7.1 abandoned and affirm the trial court's dismissal of that claim.

expends large sums to alleviate the problems of its citizens through multiple humanitarian and social programs is proscribed from promoting the provision of jobs for the unemployed, an increase in the tax base, and the prevention of economic stagnation." 342 N.C. at 722, 467 S.E.2d at 624. Thus, under *Maready*, the need to offer economic incentive programs to attract industry that will replace lost jobs is necessarily a public purpose. Here, the General Assembly's legislative findings express its determination that North Carolina must make an effort to transition from our traditional manufacturing base—which has sustained a substantial loss of jobs to overseas competition—to a more modern manufacturing base, such as computer manufacturing, that will likely grow in the future. *See* 2004 N.C. Sess. Laws 204, § 1. These findings fall squarely within the public purposes identified in *Maready*.

Moreover, *Maready* quoted favorably the prescient dissent of former Chief Justice Parker:

"North Carolina is no longer a predominantly agricultural community. We are developing from an agrarian economy to an agrarian and industrial economy. North Carolina is having to compete with the complex industrial, technical, and scientific communities that are more and more representative of a nation-wide trend. All men know that in our efforts to attract new industry we are competing with inducements to industry offered through legislative enactments in other jurisdictions as stated in the legislative findings and purposes of this challenged Act. It is manifest that the establishment of new industry in North Carolina will enrich a whole class of citizens who work for it, will increase the per capita income of our citizens, will mean more money for the public treasury, more money for our schools and for payment of our school teachers, more money for the operation of our hospitals like the John Umstead Hospital at Butner, and for other necessary expenses of government. This to my mind is clearly the business of government in the jet age in which we are living. Among factors to be considered in determining the effect of the challenged legislation here is the aggregate income it will make available for community distribution, the resulting security of their [sic] income, and the opportunities for more lucrative employment for those who desire to work for it."

342 N.C. at 727, 467 S.E.2d at 627 (quoting *Mitchell v. N.C. Indus. Dev. Fin. Auth.*, 273 N.C. 137, 164, 159 S.E.2d 745, 764 (1968) (Parker,

C.J., dissenting)). As the General Assembly's findings with respect to the Computer Legislation reflect precisely the same concerns, we find this quote as applicable here as it was in *Maready*. We are bound by *Maready* and, therefore, may not now hold that the concerns that formed a basis for the Computer Legislation do not constitute a public purpose.

Plaintiffs nevertheless argue that the Computer Legislation is "directly and exclusively" for Dell's benefit, and, as a result, fails the second prong of *Madison Cablevision*. Similarly, plaintiffs' amended complaint asserts that the Computer Legislation is not for a public purpose because it provides "direct government subsidies for a private business enterprise." While we do not read the legislation as narrowly as plaintiffs, we note nonetheless that the challenged benefits in *Maready* also went to specific companies. *Id.* at 713, 467 S.E.2d at 618-19.

Plaintiffs' argument also cannot be reconciled with *Peacock*, in which this Court considered whether two agreements between the Charlotte Convention Center Authority and various parties representing the Charlotte Hornets basketball team were unconstitutional when the agreements required the Authority to pay directly to specific private parties a percentage of the revenue generated by the Coliseum. 139 N.C. App. at 489-92, 533 S.E.2d at 844-46. We concluded that those payments were indeed for "public purposes" and, as in *Maready*, noted that the mere fact that the agreements benefitted private parties was not dispositive: "[T]he fact that a private individual benefits from a particular municipal transaction is insufficient to make out a claim under [N.C. Const. art.] V, § 2. Rather, the test is whether the transaction will promote the welfare of the local government and results from the local government's efforts to better serve the interests of its people." *Id.* at 494, 533 S.E.2d at 847-48 (internal citation omitted). *See also Piedmont Triad Airport Auth. v. Urbine*, 354 N.C. 336, 343, 554 S.E.2d 331, 335 (2001) (concluding legislative condemnation of private property that would be used to construct Federal Express facility was nevertheless a condemnation for a "public use" because "[t]he arrangement advances the primary goal of giving effect to the people's general desire for better seaports and airports"), *cert. denied*, 535 U.S. 971, 152 L. Ed. 2d 381, 122 S. Ct. 1438 (2002).

Finally, plaintiffs' arguments reflect a misunderstanding of the public purpose doctrine. The task of the judiciary is to determine whether the *aim* of the legislation is primarily public and not to

weigh the public benefit against the private benefit by making findings as to the projected monetary value of each. Indeed, the approach urged by plaintiffs was the approach of the dissent in *Maready*. *See Maready*, 342 N.C. at 736, 467 S.E.2d at 632. We do not "pass upon the wisdom or propriety of legislation in determining *the primary motivation* behind a statute . . . ." *Id.* at 725, 467 S.E.2d at 626 (emphasis added). We look instead to whether the purpose of "an act will promote the welfare of a state or a local government and its citizens," *id.* at 724, 467 S.E.2d at 625, and do not engage in economic projections as to the potential monetary benefits resulting from the legislation. The latter analyses are for the General Assembly and the Executive Branch, which can also take into account non-monetary benefits.

In short, to put forth a claim for relief, plaintiffs were required to plead facts demonstrating that the motivation, aim, or intent of the Computer Legislation, the County and City Resolutions, and the Agreement was not a public one. Plaintiffs' complaint contains no allegations suggesting that the legislative bodies were not acting with a motivation to increase the tax base or alleviate unemployment and fiscal distress. Rather, their complaint focuses exclusively on the various purported benefits provided to Dell. *Maready* determined, however, that "an expenditure does not lose its public purpose merely because it involves a private actor." *Id.* We hold, therefore, that the trial court did not err, under *Maready* and *Peacock*, in concluding that plaintiffs failed to state a claim for relief under the Public Purpose Clauses of the North Carolina Constitution.

III. The Exclusive Emoluments Clause

[4] Plaintiffs next argue that the trial court erred by concluding they had failed to state a claim that the Computer Legislation and the County and City Resolutions ran afoul of the Exclusive Emoluments Clause. Under this provision, "[n]o person or set of persons is entitled to exclusive or separate emoluments or privileges from the community but in consideration of public services." N.C. Const. art. I, § 32. "An emolument is defined as '[t]he profit arising from office, employment, or labor; that which is received as a compensation for services, or which is annexed to the possession of office as salary, fees, and perquisites.' " *Crump v. Snead*, 134 N.C. App. 353, 356, 517 S.E.2d 384, 387 (quoting *Black's Law Dictionary* 524 (6th ed. 1990)), *disc. review denied*, 351 N.C. 101, 541 S.E.2d 143 (1999).

Our Supreme Court has held that not every classification that favors a particular group of persons is an " 'exclusive or separate

emolument[] or privilege[]' " within the meaning of the constitutional prohibition. *Town of Emerald Isle v. State*, 320 N.C. 640, 652, 360 S.E.2d 756, 764 (1987) (quoting N.C. Const. art. I, § 32). Exemptions in favor of a specific group of persons are not an exclusive emolument or privilege if: "(1) the exemption is intended to promote the general welfare rather than the benefit of the individual, and (2) there is a reasonable basis for the legislature to conclude the granting of the exemption serves the public interest." *Id.* at 654, 360 S.E.2d at 764. Although the Supreme Court's language in *Emerald Isle* refers only to "exemptions," this Court has applied *Emerald Isle* with equal force to affirmative "benefits." *See Crump*, 134 N.C. App. at 357, 517 S.E.2d at 387 (inserting phrase "[or benefit]" into *Emerald Isle* test and applying *Emerald Isle* to hold that legislatively conferred longer terms and additional pay for city council members were not exclusive emoluments).

In *Peacock*, this Court held that when legislation is determined to "promote the public benefit" under the Public Purpose Clauses, it necessarily is not an exclusive emolument. 139 N.C. App. at 496, 533 S.E.2d at 848. As discussed above, the incentives and subsidies provided to Dell are intended to promote the general economic welfare of the communities involved, rather than to solely benefit Dell, and, accordingly, do not amount to exclusive emoluments.

Plaintiffs nevertheless urge us to consider whether the disputed incentives and subsidies are "in consideration of 'public services.' " *See Leete v. County of Warren*, 341 N.C. 116, 118, 462 S.E.2d 476, 478 (1995) (noting Exclusive Emoluments Clause "precludes exclusive or separate emoluments except 'in consideration of public services' " (quoting N.C. Const. art. I, § 32)). That issue only arises once a court has determined that an exemption or benefit constitutes an exclusive emolument. As we have concluded that the disputed incentives and subsidies were not exclusive emoluments, it is immaterial whether they were provided "in consideration of public services." Consequently, the trial court did not err in concluding that plaintiffs failed to state a claim for relief under the Exclusive Emoluments Clause.

## Conclusion

In sum, we agree with the trial court that plaintiffs lacked standing under the state Uniformity of Taxation Clauses and the federal Dormant Commerce Clause, but hold that the trial court erred in concluding that plaintiffs lacked standing to bring their claims under the

Public Purpose and Exclusive Emoluments Clauses. As to those claims, however, we hold that the trial court properly concluded that plaintiffs had failed to state a claim for relief under these provisions and, therefore, affirm.

Affirmed.

Judges WYNN and ELMORE concur.