SCA-Blue Ridge, LLC v. WakeMed, 2014 NCBC 31.

| | | |
|---|---|---|
| NORTH CAROLINA | | IN THE GENERAL COURT OF JUSTICE |
| | | SUPERIOR COURT DIVISION |
| WAKE COUNTY | | 13 CVS 2470 |

SCA-BLUE RIDGE, LLC; BLUE    )
RIDGE GP, LLC; and BLUE RIDGE   )
DAY SURGERY CENTER, LP,     )
                              )
                Plaintiffs  )      **OPINION AND ORDER ON**
                              )      **MOTION TO DISMISS**
v.                            )
                              )
WAKEMED,                  )
                              )
                Defendant  )

THIS CAUSE, designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Chief Special Superior Court Judge for Complex Business Cases, comes before the court upon Defendant's Motion to Dismiss ("Motion"), pursuant to Rule 12(b)(1) of the North Carolina Rules of Civil Procedure ("Rule(s)"); and

THE COURT, after reviewing the Motion, briefs in support of and in opposition to the Motion, arguments of counsel and other matters of record, CONCLUDES that the Motion should be GRANTED as to Claim One, in part, and Claim Five, for the reasons stated herein.

> *Nexsen Pruet, PLLC, by John I. Mabe, Jr., Esq. and Robert A. Hamill, Esq., and Wyrick Robbins Yates & Ponton, LLP, by Frank S. Kirschbaum, Esq., for Plaintiffs.*
>
> *Smith Moore Leatherwood LLP, by William R. Forstner, Esq. and Maureen Demarest Murray, Esq. for Defendant.*

Jolly, Judge.

## PROCEDURAL HISTORY

[1]     On February 21, 2013, Plaintiffs SCA-Blue Ridge, LLC ("SCA-Blue Ridge"), Blue Ridge GP, LLC ("Blue Ridge GP") and Blue Ridge Day Surgery Center, L.P. ("Blue Ridge DSC") filed a Verified Complaint and Motion for Injunctive Relief against Defendant WakeMed, initiating this civil action.

[2]     Plaintiffs filed a First Amended Complaint and Motion for Injunctive Relief ("Complaint") on March 26, 2013.

[3]     In the Complaint, Plaintiffs allege the following claims for relief ("Claim(s)"): First Claim for Relief – Claim for Declaratory Judgment ("Claim One"); Second Claim for Relief – Alternative Motion for Preliminary Injunction and Claim for Permanent Injunction ("Claim Two"); Third Claim for Relief – Claim for Breach of Fiduciary Duty ("Claim Three"); Fourth Claim for Relief – Breach of Fiduciary Duty and Misappropriation of Business Opportunity ("Claim Four") and Fifth Claim for Relief – Claim for Violation of N.C. Gen. Stat. § 131E-190(h) ("Claim Five").

[4]     On April 25, 2013, Defendant filed the Motion, seeking dismissal of all Claims pursuant to Rule 12(b)(1).  Specifically, Defendant contends that the statute of limitations period for Plaintiffs to contest the Certificate of Need ("CON")[1] exemption approval underlying this action expired prior to filing this action,[2] that Plaintiffs failed to exhaust their administrative remedies as required by law[3] and that Plaintiffs are barred

---

[1] A Certificate of Need is "a written order which affords the person so designated as the legal proponent of the proposed project the opportunity to proceed with the development of such project." G.S. § 131E-176(3). As discussed below, an interested party must often obtain a CON prior to the development of a health care facility. In substance, the requirement is a mechanism to restrict the development of unnecessary health services and facilities. *See, e.g.*, NC DIVISION OF HEALTH SERVICE REG.: CERTIFICATE OF NEED, http://www.ncdhhs.gov/dhsr/coneed/ (last visited July 18, 2014).

[2] Br. Supp. WakeMed's Mot. Dismiss ("Br. Supp.") 4.

[3] *Id.* at 5.

from seeking relief under G.S. 131E-190(h).[4] Defendant further seeks dismissal of the action by a plea in abatement, contending that issues raised here are too intertwined with contested issues in a related administrative action.[5]

[5]     The Motion has been fully briefed and argued and is ripe for determination.

## FACTUAL BACKGROUND

Among other things, the Complaint alleges that:

[6]     Plaintiff SCA-Blue Ridge is a Delaware limited liability company.[6]

[7]     Plaintiff Blue Ridge GP is a North Carolina limited liability company.[7]

[8]     Plaintiff Blue Ridge DSC is a limited partnership organized and existing under Tennessee law.[8]

[9]     Defendant WakeMed is a North Carolina non-profit organization.[9]

[10]    Plaintiff SCA-Blue Ridge developed the Blue Ridge Day Surgery Center, a surgical facility, in 1993. The Blue Ridge Day Surgery Center is owned by Blue Ridge DSC.[10]

---

[4] *Id.* at 8-9.
[5] *Id.* at 9. At the time of the Motion, the administrative action was pending. A decision in the action was issued on July 23, 2013. Surgical Care Affiliates, LLC & Blue Ridge Day Surgery Center, L.P. v. N.C. Dep't of Health and Human Serv., Div. of Health Serv. Regulation, Certificate of Need Section, 12 DHR 09678 (2013), *available at* http://www.oah.state.nc.us/hearings/decisions/dhr/dhr/ 12%20DHR%2009678.pdf ("Administrative Decision"). The Administrative Decision, which affirmed the North Carolina Department of Health and Human Services, Division of Health Service Regulation, Certificate of Need Section, was subsequently appealed by Surgical Care Affiliates and Blue Ridge DSC to the North Carolina Court of Appeals. As of the time of this Opinion, no decision has been issued by the North Carolina Court of Appeals.
[6] Compl. ¶ 1.
[7] *Id.* ¶ 2.
[8] *Id.* ¶ 3.
[9] *Id.* ¶ 4.
[10] *Id.* ¶ 8.

[11]     The Blue Ridge Day Surgery Center is an ambulatory surgical facility ("ASF") where patients receive outpatient surgical services. Under North Carolina law, the owner of an ASF must receive a CON prior to developing a "new institutional health service." G.S. § 131E-178.[11]

[12]     Ownership in Blue Ridge DSC is split between a general partner and limited partners.[12]

[13]     In early 2010, WakeMed and SCA-Blue Ridge formed Blue Ridge GP to serve as Blue Ridge DSC's general partner.[13] Upon the formation of Blue Ridge GP, WakeMed became controlling member-manager of Blue Ridge GP by acquiring a 51% interest in Blue Ridge GP.[14]

[14]     WakeMed and SCA-Blue Ridge entered into an operating agreement ("Operating Agreement") for Blue Ridge GP. The Operating Agreement included a noncompete provision prohibiting WakeMed and its affiliates from competing with Blue Ridge DSC through direct or indirect ownership interest in "a facility or business that performs outpatient surgery in a freestanding ambulatory surgery center . . . within a two (2) mile radius" of the Blue Ridge Day Surgery Center for a period of one year from the end of WakeMed's membership in Blue Ridge GP.[15]

[15]     In its capacity as a partner of Blue Ridge GP, SCA-Blue Ridge notified WakeMed of an opportunity for Blue Ridge GP to enter into purchase negotiations for a nearby ASF, Southern Eye Associates Ophthalmic Surgery Center ("Southern Eye

---

[11] *Id.* ¶¶ 6-7.
[12] *Id.* ¶ 9.
[13] *Id.* ¶ 11.
[14] *Id.* ¶¶ 11, 12.
[15] *Id.* ¶ 15.

Associates OSC").  WakeMed was still the controlling member of Blue Ridge GP at that time.[16]

[16]    WakeMed indicated that it would be interested in acquiring Southern Eye Associates OSC and would contact the owner of the facility to arrange a meeting.[17]

[17]    Instead of negotiating with the owner of Southern Eye Associates OSC on behalf of Blue Ridge GP, WakeMed negotiated for its own acquisition of Southern Eye Associates OSC prior to March 31, 2012, while it was still a controlling member of Blue Ridge GP.[18] WakeMed's membership in Blue Ridge GP ceased on March 31, 2012.[19]

[18]    On March 8, 2012, WakeMed notified the CON Section of the North Carolina Division of Health Service Regulation[20] ("CON Section") that it planned to acquire Southern Eye Associates OSC's ASF.[21] On March 16, 2012, the chief of the CON Section granted an exemption ("CON Exemption") for WakeMed to proceed with its acquisition of Southern Eye Associates OSC without a CON.[22]

[19]    On May 14, 2012, WakeMed notified the Acute and Home Care Licensure and Certification Section of the Division of Health Service Regulation that it had completed its negotiations with Southern Eye Associates OSC.  WakeMed applied for a formal CON to relocate the two operating rooms formerly operated by Southern Eye Associates OSC to WakeMed's Raleigh campus.[23]

---

[16] *Id.* ¶¶ 19-20.
[17] *Id.* ¶ 20.
[18] *Id.* ¶ 22. In WakeMed's application for CON, WakeMed stated that it acquired the Southern Eye Associates OSC assets "in early 2012." *Id.* ¶ 32.
[19] *Id.* ¶ 21.
[20] The Division of Health Service Regulation is part of the North Carolina Department of Health and Human Services.
[21] Compl. ¶ 27.
[22] *Id.* ¶ 28.
[23] *Id.* ¶ 30.

[20]    The CON Section approved the application in September 2012, a decision that was subsequently appealed by Blue Ridge DSC and Surgical Care Affiliates, LLC.[24] In the administrative matter, Plaintiffs contest the CON Section's September 2012 approval of Defendant's CON application. Specifically, the petition challenges the CON Section's decision for exceeding its authority in granting the CON, not applying the correct formality requirements to WakeMed's application, and because WakeMed had not acquired the facility before submitting its application.[25] As a remedy, the petition would have the CON approval revoked.

[21]    Plaintiffs allege that WakeMed's negotiations to acquire Southern Eye Associates OSC violated the Operating Agreement between the parties, because the negotiations took place while WakeMed was still the controlling member of Blue Ridge GP and the noncompete provisions of the Operating Agreement were still in place.[26] In the alternative, Plaintiffs allege that WakeMed did not acquire a sufficient interest in Southern Eye Associates OSC to obtain a CON,[27] and therefore would be precluded from converting and moving the operating rooms.[28]

## DISCUSSION

[22]    The Motion seeks dismissal of the Claims pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.  "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Rule 12(h)(3). Unlike a motion to dismiss for failure to state a claim, a court

---

[24] Administrative Decision 1. Surgical Care Affiliates, LLC is the managing partner of Blue Ridge Day Surgery, L.P. *Id.* at 10.
[25] *Id.* at 3.
[26] Compl. ¶¶ 33-34.
[27] Plaintiffs seem to suggest that there is insufficient proof that WakeMed successfully acquired the ASF. *Id.* ¶¶ 23, 31, 35, 39.
[28] *Id.* ¶¶ 33-37.

considering dismissal for lack of subject matter jurisdiction may weigh matters outside of the pleadings. *Tart v. Walker*, 38 N.C. App. 500, 502 (1978). The Plaintiff bears the burden of establishing subject matter jurisdiction. *See, e.g.*, *Blinson v. State*, 186 N.C. App. 328, 333 (2007). In opposing a motion to dismiss under Rule 12(b)(1), the Plaintiff bears the burden to show facts that if accepted as true would demonstrate the existence of jurisdiction. *Wilkie v. Stanley*, 2011 NCBC 11 ¶ 7. Any discrepancy will be construed in favor of the non-movant, and the court should grant the motion only if the material jurisdictional facts are not in dispute. *Id.*

[23]     In substance, Defendant's Motion contends that this action should be dismissed pursuant to Rule 12(b)(1) on the grounds that Plaintiffs did not timely challenge the decision granting the CON exemption and did not exhaust their administrative remedies prior to seeking judicial review in this action.  Defendants further contend that the entire action should be abated because the pending issues on appeal to the Court of Appeals from the Administrative Decision involve the same issues as those raised here.[29]

---

[29] Br. Supp. at 1. An action will be abated if a prior action for the same cause is pending in the same court or a court of competent jurisdiction. *Clark v. Craven Reg'l Med. Auth.*, 326 N.C. 15, 20 (1990). Courts typically look to the similarities between the parties, subject matter, issues involved and requested relief to determine whether or not an action may be considered the "same cause." *Id.* at 21. This requirement may be satisfied by a pending appeal. *Id.* A court should consider the plea in abatement prior to moving to the merits of the case, *see Cox v. Cox*, 246 N.C. 532, 533 (1957), to avoid problems such as redundant lawsuits, waste of judicial resources and inconsistent verdicts. *See Clark*, 326 N.C. at 20; *see also State ex rel. Onslow Cnty. v. Mercer*, 128 N.C. App. 371, 375 (1998) (noting that a subsequent action on the same subject matter is "wholly unnecessary" and should be abated in the interest of judicial economy). Not every action with similar parties engaged in a formal dispute as to the same or similar issues will qualify for an order of abatement. For example, courts will not necessarily abate overlapping actions that have been brought under different statutes. *See, e.g.*, *State ex rel. Onslow Cnty.*, 128 N.C. App. 371 (declining to abate an action brought under a state statute where, in order to prevail, the State would need to prove elements different from those required for success in the original action brought under county ordinance). Here, there remains an appeal pending relative to the Administrative Decision as of the time of this Opinion; as such, an analysis for a plea in abatement is not precluded, because a prior action on the same issues is still pending. *See Clark* at 21.

## Claim One

[24]     Claim One seeks, in part, a declaration that granting of the CON should be invalidated because of issues that have been raised in the administrative proceeding now on appeal. Claim One further seeks a declaration that Defendant was barred from seeking a CON by the terms of the parties' Operating Agreement. In substance, Defendant contends that Plaintiffs' Claim One constitutes an untimely effort at an inappropriate collateral attack on the CON procedures and decisions being considered in the administrative proceeding now on appeal.

[25]     With regard to that part of Claim One attacking the granting of the CON, the court agrees with Defendant's position and concludes under the principle of abatement that it does not have jurisdiction. Accordingly, as to that part of Claim One, the Motion should be GRANTED. However, that part of Claim One seeking a declaration of whether contractual terms of the Operating Agreement between the parties have been breached by Defendant's seeking the CON is within the jurisdiction of this court, and the Motion as to Claim One should be DENIED as to such issues.

## Claim Two, Three and Four

[26]     In Claim Two, Plaintiffs seek injunctive relief "prohibiting WakeMed from . . . holding an interest in Southern Eye Associates OSC, or from relocating operating rooms," on the basis of Section 17.1 of the parties' Operating Agreement.[30] This Claim rests upon issues of contract and is not dependent on the CON Section decision.[31]

---

[30] Compl. ¶52.
[31] Whether the requested injunctive relief is legally available to Plaintiffs under the circumstances of this action remains to be seen.

[27]     Similarly, Claims Three and Four allege that the Defendant has breached fiduciary duties to the Plaintiffs. Claim Three alleges that WakeMed has breached the parties' Operating Agreement,[32] while Claim Four makes a similar argument on the basis of Defendant's position as controlling shareholder of Blue Ridge GP.[33]

[28]     These three Claims raise issues arising from alleged breaches of contractual relationships between the parties. The court has jurisdiction to determine such matters, and as to Claims Two, Three and Four the Motion should be DENIED.

## Claim Five

[29]     Claim Five seeks relief under G.S. §131E-190, which permits an aggrieved party to bring a civil action upon the offering of a health service without obtaining a CON. Defendant argues that the statutory support for Claim Five does not provide a basis for relief to Plaintiffs. Defendant alleges that it (a) has sought and been approved for a CON exemption for purchase of the operating rooms and a CON to relocate them, but (b) presently is not moving ahead to operate them without approval from the CON Section. It contends that Plaintiffs may not seek the relief requested in Claim Five because the statute offers relief only in cases where a party has begun to "offer a new institutional health service without having first obtained a certificate of need for such services" and that Plaintiffs cannot in good faith allege that those circumstances exist here.[34]

---

[32] *Id.* ¶¶ 53-57.

[33] *Id.* ¶¶ 58-64.

[34] Defendant argues that it submitted an application and been approved for the CON, but has not proceeded with relocation because Plaintiffs' administrative challenge is preventing Defendant from obtaining the CON. Therefore, Defendant has not taken a course of action under which Plaintiffs could validly argue for relief under G.S. § 131E-190(h). Plaintiffs respond that Defendant's Motion as to Claim Five should be denied, because they are entitled to take discovery as to whether or not Defendant has proceeded to offer health services without the requisite CON.

[30]    In substance, similar to part of Plaintiffs' Claim One, Claim Five constitutes an attack on the CON exemption and related administrative procedures. It is not based upon issues of contract.  Further, it is clear Plaintiffs simply are unable to allege current facts that support a claim under G.S. § 131E-184(a)(8). Whether under (a) the principles of abatement or (b) the requirement that a party plaintiff allege facts that facially fall within the statute, the court is forced to conclude that it does not have jurisdiction to entertain this Claim, and as to it the Motion should be GRANTED.

NOW THEREFORE, based on the foregoing FINDINGS and CONCLUSIONS, it hereby is ORDERED that:

[31]    The Motion is GRANTED with regard to that part of Claim One seeking a declaration that granting of the CON should be invalidated, and that part of Claim One is DISMISSED.

[32]    As to the remainder of Claim One, the Motion is DENIED.

[33]    The Motion is DENIED with regard to Claims Two, Three and Four.

[34]    The Motion is GRANTED with Regard to Claim Five, and Claim Five is DISMISSED.

This the 18th day of July, 2014.