GEER, Judge.
 

 *402
 
 Plaintiff, the Reverend Carl E. Bigelow, appeals from an order granting defendants' motion to dismiss for failure to state a claim upon which relief can be granted. Plaintiff, a former pastor of defendant Sassafras Grove Baptist Church ("the "Church") who became disabled, has brought claims for both breach of contract and violation of the North Carolina Wage and Hour Act for failure to pay compensation and benefits plaintiff alleges is due to him pursuant to a written employment contract he entered into with defendants. While defendants have argued that two overlapping doctrines emanating from the First Amendment, the "ministerial exception" and the "ecclesiastical abstention doctrine," preclude the courts from deciding plaintiff's claims, we hold, consistent with other jurisdictions addressing this issue, that those doctrines do not bar courts from resolving contractual disputes not involving ecclesiastical issues and requiring only application of neutral principles of contract and statutory law. We, therefore, reverse the trial court's order.
 

 *361
 

 Facts
 

 On 25 October 2013, plaintiff filed a complaint against defendants-the Church and its Board of Deacons, including Willie Turner, James Hinton, Louis Henderson, Bobby Jones, Roy Johnson, Selma Hunter, Cindy Henderson, and the Revered David Holloway-for breach of contract and violation of the North Carolina Wage and Hour Act. The complaint alleged the following facts.
 

 Plaintiff began serving as a part-time pastor of "the Church," which is located in Yanceyville, North Carolina, in 1975. He held this part-time position until 14 February 2001, during which time he also worked for General Electric Co. ("GE") in Mebane, North Carolina. In order to be eligible for retirement at GE, plaintiff was required to continue working there through 13 February 2013. However, on 14 February 2001, plaintiff resigned his position with GE and entered into a contract with the Church entitled "Agreement of Full Time Pastorship." This contract consisted of several provisions that are pertinent to this appeal:
 

 The Pastor shall serve the church for an indefinite period since there is no scriptural support of tenure. Where as, by [sic] Minister CARL BIGELOW is resigning from his current position of employment and would be eligible for retirement in the next (12) years, the [sic] accepts the liability of his employment and livelihood of his family for the enduring time until retirement.
 

 If the Pastor should become disabled to carry on his work, he shall be paid his full salary until, the disability
 
 *403
 
 insurance begin to paid [sic] (which is provide [sic] by church) and relieves church of its responsibility to Pastor.
 

 ....
 

 Where as, at any time the church shall become dissatisfied with the services of Pastor and ask for his resignation, the congregation at that time, shall take a vote and be governed by the majority of voting members eligible (members in good standing with church). At that time the church shall pay the Pastor the total package in advance or his services shall continue until such time the church shall meet this requirement.
 

 After 10 years of serving as head pastor of the Church, plaintiff contracted kidney disease in September 2011, was hospitalized, and underwent surgery. As a result, he was no longer able to serve as the pastor of the Church. In addition, because the long-term disability insurance policy mentioned in the employment agreement lapsed prior to plaintiff's disability, plaintiff was without any disability coverage. At this point in time, it appears, based on the complaint, that the Church had ceased all payment of plaintiff's salary and benefits.
 

 Plaintiff filed suit against the Church on 25 October 2013. On 23 December 2013, defendants filed a motion to dismiss contending that the trial court did not have jurisdiction to hear this dispute and that plaintiff had failed to state a claim upon which relief could be granted. Defendants subsequently also filed a motion for summary judgment supported by the affidavits of defendants Willie L. Turner and James Hinton on 30 December 2014.
 

 The trial court heard defendant's motion to dismiss on 6 January 2015. Because plaintiff did not receive proper notice of defendant's motion for summary judgment and the accompanying affidavits, the trial court limited the hearing to the motion to dismiss and did not consider the affidavits.
 
 [1]
 
 On 20 January 2015, the trial court entered an order granting defendants' motion to dismiss. Plaintiff timely appealed to this Court.
 

 *404
 

 Discussion
 

 "This Court reviews de novo a trial court's ruling on a motion to dismiss."
 
 Transp. Servs. of N.C., Inc. v. Wake Cnty. Bd. of Educ.,
 

 198 N.C.App. 590
 
 , 593,
 
 680 S.E.2d 223
 
 , 225 (2009). "[T]he question for the court is whether the allegations of the complaint, treated as true, are sufficient to
 
 *362
 
 state a claim upon which relief may be granted under some legal theory, whether properly labeled or not."
 
 Blinson v. State,
 

 186 N.C.App. 328
 
 , 335,
 
 651 S.E.2d 268
 
 , 274 (2007). "The court must construe the complaint liberally and 'should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief.' "
 
 Leary v. N.C. Forest Prods., Inc.,
 

 157 N.C.App. 396
 
 , 400,
 
 580 S.E.2d 1
 
 , 4 (quoting
 
 Block v. Cnty. of Person,
 

 141 N.C.App. 273
 
 , 277-78,
 
 540 S.E.2d 415
 
 , 419 (2000) ),
 
 aff'd,
 

 357 N.C. 567
 
 ,
 
 597 S.E.2d 673
 
 (2003).
 

 I
 

 We first address whether plaintiff adequately stated claims for breach of contract and violation of the North Carolina Wage and Hour Act. "The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract."
 
 Poor v. Hill,
 

 138 N.C.App. 19
 
 , 26,
 
 530 S.E.2d 838
 
 , 843 (2000). Here, plaintiff alleged the existence of a written employment contract between himself and the Church, signed by several representatives of the Church on 14 February 2001.
 

 Specifically, plaintiff alleged that he was guaranteed under the contract "salary continuation upon his disability" and "salary, housing, utilities, social security, and medical insurance ... through February 13, 2013" in consideration for his forfeiture of his previous job's benefits. He further alleged that defendants breached this contractual provision upon their refusal to pay his salary and other benefits when he became disabled. These allegations taken as true are sufficient to state a claim for breach of contract.
 

 In arguing that plaintiff has failed to state a claim for relief, defendants rely on the principle that, in the absence of an employment contract providing for a specified term of employment, plaintiff is an employee at will and cannot sue for breach of contract. This argument is beside the point.
 

 Certainly, it is well established "that absent some form of contractual agreement between an employer and employee establishing a
 
 definite
 
 period of employment, the employment is presumed to be an 'at-will'
 

 *405
 
 employment," but in that event, "the employee states no cause of action for breach of contract
 
 by alleging that he has been discharged without just cause.
 
 "
 
 Harris v. Duke Power Co.,
 

 319 N.C. 627
 
 , 629,
 
 356 S.E.2d 357
 
 , 359 (1987) (second emphasis added),
 
 disapproved of on other grounds by
 

 Kurtzman v. Applied Analytical Indus., Inc.,
 

 347 N.C. 329
 
 ,
 
 493 S.E.2d 420
 
 (1997). Thus,
 
 Harris
 
 mandates that an "at-will" employee cannot state a claim for breach of contract based on wrongful discharge.
 

 The "at will" doctrine does not preclude an at-will employee from suing for breach of contract with respect to benefits or compensation to which the parties contractually agreed. Thus, in
 
 Brooks v. Carolina Tel. & Tel. Co.,
 

 56 N.C.App. 801
 
 , 804-05,
 
 290 S.E.2d 370
 
 , 372 (1982), when the defendant pointed to "at will" cases in arguing that the plaintiff was not entitled to sue for breach of contract with respect to a severance agreement, this Court held: "Those cases dealt with each employee's right to continued employment and did not deal with the issue of benefits or compensation earned
 
 during
 
 employment." Those cases are not apposite to the case now before us.
 
 See also
 

 Way v. Ramsey,
 

 192 N.C. 549
 
 , 551-52,
 
 135 S.E. 454
 
 , 455 (1926) (acknowledging that minister, who served at pleasure of his church organization, could sue for breach of contract with respect to nonpayment of his salary).
 

 Because plaintiff in this case is not challenging the basis for his dismissal, but only seeks to recover money and benefits owed under the employment contract he alleges he entered into with defendants, the "at will" doctrine is inapplicable. Plaintiff has, therefore, properly alleged a claim for breach of his employment contract's provisions for compensation and benefits.
 

 Plaintiff also alleged a claim under the North Carolina Wage and Hour Act. Defendants do not address the sufficiency of those allegations. The Wage and Hour Act provides: "Every employer shall pay every employee all wages and tips accruing to the employee on the regular payday. Pay periods
 
 *363
 
 may be daily, weekly, bi-weekly, semi-monthly, or monthly." N.C. Gen.Stat. § 95-25.6 (2015). Further, "[a]ny employer who violates the provisions of ... G.S. 95-25.6 ... shall be liable to the employee ... in the amount of their unpaid ... compensation, or their unpaid amounts due under G.S. 95-25.6...." N.C. Gen.Stat. § 95-25.22(a) (2015).
 
 See
 

 Meehan v. Am. Media Int'l, LLC,
 

 214 N.C.App. 245
 
 , 262,
 
 712 S.E.2d 904
 
 , 914 (2011) (remanding to trial court for determination of salary due pursuant to a claim brought under the Wage and Hour Act).
 

 Plaintiff's allegations that the contractually promised "salary" constituted wages as defined in N.C. Gen.Stat. § 95-25.1
 
 et seq.
 
 (2015), along
 
 *406
 
 with his allegation that defendant wrongfully failed to pay that salary, sufficiently alleges a claim under the North Carolina Wage and Hour Act.
 
 See
 

 Hamilton v. Memorex Telex Corp.,
 

 118 N.C.App. 1
 
 , 10,
 
 454 S.E.2d 278
 
 , 282 (1995) ("[O]nce the employee has earned the wages and benefits under this statutory scheme the employer may not rescind them[.]").
 

 II
 

 Defendants primarily based their motion to dismiss on their claim that plaintiff's causes of action are barred by the "ministerial exception" or the "ecclesiastical abstention" doctrine.
 
 [2]
 
 In making their argument on appeal, however, defendants address almost exclusively the doctrine's applicability to wrongful discharge claims. Although defendants appear to assume that plaintiff is challenging the termination of his employment, his complaint only asserts claims based on the non-payment of contractually agreed upon compensation and benefits. Neither doctrine, therefore, applies to plaintiff's claims.
 

 We first note that although both legal doctrines bar certain claims against religious institutions for reasons arising out of the Free Exercise and Establishment Clauses of the First Amendment of the United States Constitution, our appellate courts have not specifically addressed the ministerial exception and have only discussed the jurisdictional limits set in place by the ecclesiastical abstention doctrine. Because plaintiff argues both legal principles are inapplicable to his alleged claims, we address each in turn.
 

 The ministerial exception is best articulated in the United States Supreme Court decision of
 
 Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.,
 
 --- U.S. ----,
 
 132 S.Ct. 694
 
 ,
 
 181 L.Ed.2d 650
 
 (2012). We note that although North Carolina appellate courts have not previously addressed the ministerial exception, we are, of course, under the Supremacy Clause of the United States Constitution, bound by
 
 Hosanna-Tabor
 
 's application and construction of the First Amendment.
 
 See
 

 State v. Elliott,
 

 360 N.C. 400
 
 , 421,
 
 628 S.E.2d 735
 
 , 749 (2006) ("The Supreme Court of the United States is the final authority on federal constitutional questions.").
 

 We first note that the parties mistakenly assume that the ministerial exception is a question of subject matter jurisdiction.
 
 Hosanna-Tabor
 
 clarifies, however, that "the exception operates as an affirmative defense to an otherwise cognizable claim, not a jurisdictional bar. That
 
 *407
 
 is because the issue presented by the exception is 'whether the allegations the plaintiff makes entitle him to relief,' not whether the court has 'power to hear [the] case.' " - -- U.S. at ---- n. 4,
 
 132 S.Ct. at
 
 709 n. 4,
 
 181 L.Ed.2d at
 
 667 n. 4 (quoting
 
 Morrison v. Nat'l Australia Bank Ltd.,
 

 561 U.S. 247
 
 , 254,
 
 130 S.Ct. 2869
 
 , 2877,
 
 177 L.Ed.2d 535
 
 , 546 (2010) ).
 

 In explaining the ministerial exception, Chief Justice Roberts wrote for the Court: "Since the passage of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e
 
 et seq.,
 
 and other employment discrimination laws, the Courts of Appeals have uniformly recognized the existence of a 'ministerial exception,' grounded in the First Amendment, that precludes application of such legislation to claims concerning the employment relationship between a religious institution and its ministers."
 

 *364
 

 Id.
 

 at ----,
 
 132 S.Ct. at 705
 
 ,
 
 181 L.Ed.2d at 663
 
 . "By imposing an unwanted minister, the state infringes the Free Exercise Clause, which protects a religious group's right to shape its own faith and mission through its appointments. According the state the power to determine which individuals will minister to the faithful also violates the Establishment Clause, which prohibits government involvement in such ecclesiastical decisions."
 

 Id.
 

 at ----,
 
 132 S.Ct. at 706
 
 ,
 
 181 L.Ed.2d at 663
 
 .
 

 At the conclusion of Chief Justice Roberts' opinion, he limited the opinion's holding to the narrow circumstance of "employment discrimination suit[s] brought on behalf of a minister, challenging her church's decision to fire her" and specifically "express[ed] no view on whether the exception bars ... actions by employees alleging breach of contract...."
 

 Id.
 

 at ----,
 
 132 S.Ct. at 710
 
 ,
 
 181 L.Ed.2d at 668
 
 .
 

 Defendants, in relying on the ministerial exception set out in
 
 Hosanna-Tabor,
 
 vigorously argue only that "it is the decision of a church to hire or fire its pastor that is protected from judicial scrutiny[.]" Defendants cite no authority and provide no argument why the ministerial exception, as articulated in
 
 Hosanna-Tabor,
 
 should apply to claims based on nonpayment of compensation and benefits.
 

 Although North Carolina courts have not expressly addressed the ministerial exception, other jurisdictions have and, in accordance with
 
 Hosanna-Tabor,
 
 have limited its application to the context of wrongful discharge suits not alleging a breach of contract. The Supreme Court of Kentucky has held that "[secular] courts do have jurisdiction to hear and resolve employment disputes, contract claims, tort claims, or similar. And that authority is not lost as a result of the ministerial exception."
 
 Kirby v. Lexington Theological Seminary,
 

 426 S.W.3d 597
 
 , 608 (Ky.2014). Applying
 
 Hosanna-Tabor,
 
 the
 
 Kirby
 
 court held that the
 
 *408
 
 ministerial exception barred the plaintiff minister's claim that her discharge by a defendant Seminary was racially discriminatory.
 
 426 S.W.3d at 614-15
 
 .
 

 However, the court concluded that plaintiff's breach of contract claim based on the defendant Seminary's violation of its tenure policy was not barred by the ministerial exception:
 

 When deciding whether a claim is barred by the ministerial exception, it is important to remain mindful of the ministerial exception's underlying purpose: to allow religious institutions, free from government interference, to exercise freely their right to select who will present their faith tenets. Although state contract law does involve the governmental enforcement of restrictions on a religious institution's right or ability to select its ministers, those restrictions are not
 
 governmental
 
 restrictions. Simply put, the restrictions do not arise out of government involvement but, rather, from the parties to the contract, namely, the religious institution and its employee.
 

 Contractual transactions, and the resulting obligations, are assumed voluntarily. Underneath everything, churches are organizations. And, like any other organization, a church is always free to burden its activities voluntarily through contracts, and such contracts are fully enforceable in civil court. Surely, a church can contract with its own pastors just as it can with outside parties. Enforcement of a promise, willingly made and supported by consideration, in no way constitutes a state-imposed limit upon a church's free exercise rights.
 

 We are not presented with a situation where the government is inappropriately meddling in the selection of who will minister to the congregation. Limits on a religious institution's ability to choose-or the criteria for choosing-who will minister to its faithful are not being foisted on the religious institution. The government had no role in setting the limits on how the Seminary's tenured professors may be terminated. Instead, this is a situation in which a religious institution has voluntarily circumscribed its own conduct, arguably in the form of a contractual agreement, and now that agreement, if found to exist, may be enforced according to its own terms. That
 
 *409
 
 cannot breach church autonomy. Arguably, instead, this exemplifies religious autonomy because religious institutions are free to set forth policies that align with their respective mission.
 
 *365
 
 Essentially, the Seminary willingly made a decision to offer tenure-a wholly secular concept-in exchange for professorial services. Providing substance to the offer of tenure, the Seminary explicitly stated in writing that it would only terminate a tenured professor on three grounds.... Of course, under the First Amendment, and the ministerial exception for that matter, the Seminary enjoys the right to excuse ministers as it sees fit. But here, the Seminary circumscribed its right to excuse faculty, ministers or not. The Seminary agreed to only express its First Amendment right under limited conditions.
 

 Id.
 

 at 615-16
 
 (internal quotation marks and footnotes omitted).
 

 Based on this analysis, the court concluded: "Accordingly, the Seminary's decision to fire a tenured professor, whether a minister or not, is completely free of any government involvement or restriction. In the absence of government interference, the ministerial exception cannot act as a bar to an otherwise legitimate suit."
 

 Id.
 

 at 617
 
 .
 

 Other jurisdictions have similarly concluded that the ministerial exception does not bar contractual claims.
 
 See
 

 Second Episcopal Dist. African Methodist Episcopal Church v. Prioleau,
 

 49 A.3d 812
 
 , 817 (D.C.2012) (declining to extend ministerial exception "to categorically bar any claim whatsoever by a ministerial employee[,]" particularly where employee seeks salary owed under contract);
 
 Galetti v. Reeve,
 

 331 P.3d 997
 
 , 1001 (2014) ("As pled, it appears that Plaintiff can succeed on her breach of contract claim without any religious intrusion. The district court does not need to determine whether the Conference had cause to terminate Plaintiff's employment, but only whether the Conference complied with its contractual obligation....").
 

 We find these decisions persuasive. Accordingly, because plaintiff's complaint does not challenge the Church's decision to terminate his employment, but instead seeks to enforce a contractual obligation regarding his compensation and benefits, we hold that the ministerial exception does not apply and is not a basis for dismissal of plaintiff's claims.
 

 We next address the ecclesiastical abstention doctrine, which North Carolina courts hold is a jurisdictional bar to courts adjudicating
 
 *410
 
 " ecclesiastical matters of a church."
 
 Tubiolo v. Abundant Life Church, Inc.,
 

 167 N.C.App. 324
 
 , 327,
 
 605 S.E.2d 161
 
 , 163 (2004) (" 'The courts of the State have no jurisdiction over and no concern with purely ecclesiastical questions and controversies....' " (quoting
 
 Braswell v. Purser,
 

 282 N.C. 388
 
 , 393,
 
 193 S.E.2d 90
 
 , 93 (1972) ));
 
 Smith v. Privette,
 

 128 N.C.App. 490
 
 , 494,
 
 495 S.E.2d 395
 
 , 397 (1998) ("The United States Supreme Court has interpreted [the Establishment Clause] to mean that the civil courts cannot decide disputes involving religious organizations where the religious organizations would be deprived of interpreting and determining their own laws and doctrine.").
 

 "Our Supreme Court has held that a trial court's exercise of jurisdiction is improper only where 'purely ecclesiastical questions and controversies' are involved."
 
 Emory v. Jackson Chapel First Missionary Baptist Church,
 

 165 N.C.App. 489
 
 , 492,
 
 598 S.E.2d 667
 
 , 670 (2004) (quoting
 
 W. Conference of Original Free Will Baptists of N.C. v. Creech,
 

 256 N.C. 128
 
 , 140,
 
 123 S.E.2d 619
 
 , 627 (1962) ). An ecclesiastical matter is defined by our courts as " 'one which concerns doctrine, creed, or form of worship of the church, or the adoption and enforcement within a religious association of needful laws and regulations for the government of membership....' "
 
 Tubiolo,
 

 167 N.C.App. at 327
 
 ,
 
 605 S.E.2d at 163-64
 
 (quoting
 
 E. Conference of Original Free Will Baptists of N.C. v. Piner,
 

 267 N.C. 74
 
 , 77,
 
 147 S.E.2d 581
 
 , 583 (1966),
 
 overruled in part on other grounds by
 

 Atkins v. Walker,
 

 284 N.C. 306
 
 ,
 
 200 S.E.2d 641
 
 (1973) ). Thus, "[t]he dispositive question is whether resolution of the legal claim requires the court to interpret or weigh church doctrine."
 
 Smith,
 

 128 N.C.App. at 494
 
 ,
 
 495 S.E.2d at 398
 
 .
 

 "While the Courts can under no circumstance referee ecclesiastical disputes,"
 
 Tubiolo,
 

 167 N.C.App. at 329
 
 ,
 
 605 S.E.2d at 164
 
 , they "do have jurisdiction, as to civil,
 
 contract
 
 and property rights which are involved in, or arise from, a church controversy."
 

 *366
 

 Reid v. Johnston,
 

 241 N.C. 201
 
 , 204,
 
 85 S.E.2d 114
 
 , 117 (1954) (emphasis added),
 
 validity questioned on other grounds by
 

 Atkins,
 

 284 N.C. at 317
 
 ,
 
 200 S.E.2d at 649
 
 .
 
 See also
 

 Way,
 

 192 N.C. at 551
 
 ,
 
 135 S.E. at 455
 
 ("[T]he question of liability for the salary of a minister or pastor is governed by the principles which prevail in the law of contracts, and it is generally held that a valid contract for the payment of such a salary will be enforced."). However, the controversy must be resolved "pursuant to 'neutral principles of law[.]' "
 
 Atkins,
 

 284 N.C. at 319
 
 ,
 
 200 S.E.2d at 650
 
 (quoting
 
 Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church,
 

 393 U.S. 440
 
 , 449,
 
 89 S.Ct. 601
 
 , 606,
 
 21 L.Ed.2d 658
 
 , 665 (1969) ).
 

 *411
 
 Defendants seem to argue, without citing any pertinent authority, that the First Amendment of the United States Constitution immunizes, without exception, a religious institution from liability arising out of a contract between the religious institution and its ministerial employees. This unsupported assertion cannot be reconciled with
 
 Smith.
 
 This Court in
 
 Smith
 
 concluded that a holding " 'that a religious body must be held free from any responsibility for wholly predictable and foreseeable injurious consequences of personnel decisions, although such decisions incorporate no theological or dogmatic tenets-would go beyond First Amendment protection and cloak such bodies with an exclusive immunity greater than that required for the preservation of the principles constitutionally safeguarded.' "
 
 128 N.C.App. at 495
 
 ,
 
 495 S.E.2d at 398
 
 (quoting
 
 Jones v. Trane,
 

 153 Misc.2d 822
 
 , 830,
 
 591 N.Y.S.2d 927
 
 , 932 (1992) ).
 

 Although defendants cite numerous decisions holding that civil courts cannot interject themselves into ecclesiastical disputes, they again focus their argument on the bar against courts determining the propriety of a church's decision to dismiss a plaintiff from his position as pastor-an issue not present in this case. The only authority that defendants cite as barring a claim regarding compensation is
 
 Tarasi v. Jugis,
 

 203 N.C.App. 150
 
 ,
 
 692 S.E.2d 194
 
 ,
 
 2010 WL 916050
 
 at *2, 2010 N.C.App. LEXIS 493 at *3-5 (2010) (unpublished), in which this Court applied the ecclesiastical abstention doctrine when holding that the trial court lacked jurisdiction over a Wage and Hour Act claim.
 

 In
 
 Tarasi,
 
 the plaintiff priest filed a Wage and Hour Act claim against the Roman Catholic Diocese of Charlotte and its bishop, alleging that, after being instructed by the Vatican to provide the plaintiff " 'with an adequate means of livelihood and the appropriate necessities as envisioned in canons 281 § 1 and 384 of the Code of Canon Law,' " the defendants failed to do so.
 

 Id.,
 

 2010 WL 916050
 
 at *1, 2010 N.C.App. LEXIS 493 at *2. In affirming the trial court's dismissal of the plaintiff's Wage and Hour Act claim, this Court held that "[t]o determine his claim, the court would be required to determine, under ecclesiastical law, the compensation to which plaintiff is entitled" and that "[s]uch a determination is beyond the subject matter jurisdiction of the North Carolina courts...."
 

 Id.,
 

 2010 WL 916050
 
 at *2, 2010 N.C.App. LEXIS 493 at *5.
 

 Thus, in
 
 Tarasi,
 
 the plaintiff was asking the court to decide whether the Catholic diocese had complied with the Vatican's directive-a request that the court inject itself in the middle of a church dispute and decide what canonical law required. Here, plaintiff's claims, rather than
 
 *412
 
 asking the court to address ecclesiastical doctrine or church law, require the court only to make a secular decision regarding the terms of the parties' contract and to apply the neutral principles of the Wage and Hour Act. Defendants acknowledge that they are not exempt from the Wage and Hour Act.
 

 Accordingly, because a court can decide plaintiff's contract-based claims applying "neutral principles of law," without entangling the Court in an ecclesiastical dispute or interpretation, we hold that the ecclesiastical abstention doctrine does not require dismissal of plaintiff's complaint. We, therefore, hold plaintiff has sufficiently stated claims for relief and, therefore, reverse the trial court's order dismissing plaintiff's complaint.
 

 REVERSED.
 

 Judges HUNTER, JR. and DILLON concur.
 

 [1]
 

 Defendants' motion for summary judgment and the accompanying affidavits were included in the Record on Appeal. However, because defendants have made no argument on appeal that the trial court erred in refusing to consider these affidavits, we have not addressed them in this opinion.
 

 [2]
 

 Defendants merge the two doctrines, but since they are analytically distinct, we treat them separately.