Port Trinitie Homeowners Ass'n v. Port Trinitie Ass'n, 2025 NCBC 43.

STATE OF NORTH CAROLINA

DARE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
25CV000104-270

PORT TRINITIE HOMEOWNERS
ASSOCIATION, INC., a North Carolina
Non-Profit Corporation, and
JENNIFER STUMP,

Plaintiffs,

v.

PORT TRINITIE ASSOCIATION, INC.,
a North Carolina Non-Profit
Corporation, CHARLES HARRIS,
LINDA WHITESTONE, AMELIA
DECOURT, TIMOTHY CAMPEN,
CHRISSIE RANKINS, NANCY
WHITE, and DENNIS HARVEY, each
in their individual capacity,

Defendants.

**ORDER AND OPINION ON
DEFENDANTS' MOTION TO DISMISS**

1.     **THIS MATTER** is before the Court on Defendants' Motion to Dismiss (the Motion), (ECF No. 14).  Defendants move to dismiss Plaintiffs' Complaint in its entirety pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure (the Rule(s)).

2.     The Court, having considered the Motion, the related briefing, and the arguments of counsel at a hearing on the Motion, concludes for the reasons stated below that the Motion should be **GRANTED in part** and **DENIED in part**.

*Sharp, Graham, Baker & Varnell, LLP, by Casey C. Varnell, for Plaintiffs Port Trinitie Homeowners Association, Inc., a North Carolina Non-Profit Corporation; and Jennifer Stump.*

*Parker Poe Adams & Bernstein LLP, by Kevin L. Chignell and Jon Carlton McLamb, for Defendants Port Trinitie Association, Inc., a North*

*Carolina Non-Profit Corporation; Charles Harris, Linda Whitestone, Amelia DeCourt, Timothy Campen, Chrissie Rankins, Nancy White, and Dennis Harvey, each in their individual capacity.*

Earp, Judge.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

3.     The Court does not make findings of fact when ruling on a motion to dismiss.  It recites below the factual allegations in the Complaint that are relevant to the Motion before the Court.

4.     On 2 February 1984, Trinitie Group, Inc. (Trinitie) created Port Trinitie Condominium as an expandable condominium through the recordation of a Declaration of Unit Ownership (Declaration).  (Compl. ¶¶ 13−14, ECF No. 3; Pls.' Br. Opp'n Defs.' Mot. Dismiss [Pls.' Br. Opp'n], Ex. 1 [Declaration], ECF No. 29.2.[1])

5.     Defendant Port Trinitie Association, Inc. (Condominium Association) is a North Carolina nonprofit corporation that serves as the condominium owners' association and governs the membership of Port Trinitie Condominium.  (Compl. ¶¶ 2, 12.)  Defendants Charles Harris, Linda Whitestone, Amelia DeCourt, Timothy Campen, Chrissie Rankins, Nancy White, and Dennis Harvey (Individual

---

[1] While the Declaration was not attached to the Complaint it was specifically referenced in it.  A court may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers when ruling on a 12(b)(6) motion. *Krawiec v. Manly*, 370 N.C. 602, 606 (2018); *Extra Care, LLC v. Carolinas All. for Residential Excellence, LLC*, 2024 NCBC LEXIS 84, at *6 (N.C. Super. Ct. June 18, 2024).

Defendants) are members of the Condominium Association's Board of Directors.[2] (Compl. ¶ 10.)

6. The Declaration that created Port Trinitie Condominium was amended on 20 October 1984 (Amended Declaration). (Compl. ¶ 16; Pls.' Br. Opp'n, Ex. 2 [Am. Declaration], ECF No. 29.3.) The purpose of the Amended Declaration was "to facilitate a flexible inclusion of additional phases of the proposed development" for either condominium or non-condominium use. (Compl. ¶ 17; Am. Declaration at p. 637.) Exhibit C to the Amended Declaration describes the Port Trinitie development (the Development Area), including "surplus properties" (hereinafter, Community Facilities). (Am. Declaration at p. 681.) Community Facilities include, for example, "streets, walkways, tennis courts, or other recreational facilities." (Am. Declaration at p. 642.)

7. The Amended Declaration provides that "[a]ny land owners within the [D]evelopment [A]rea whether they are within the Port Trinitie Condominium or not, shall be entitled to use the [Community Facilities], including streets and walkways for access to and from their property and the Atlantic Ocean and Currituck Sound and the beneficial use of the recreational amenities or other utility easements." (Am. Declaration at pp. 642–43.) Non-condominium owners "shall be subject to an assessment fee" by the Condominium Association for use of the Community Facilities. (Am. Declaration at p. 643.)

---

[2] The Complaint alleges that the Individual Defendants are "members and/or Officers of the Board of Directors of the [Condominium] Association," but does not specify which of the Individual Defendants are officers as opposed to members. (Compl. ¶ 10.)

8. In April 1987, Trinitie recorded a plat with the Dare County Public Registry creating a single-family subdivision (Port Trinitie Subdivision) within the Development Area. (Compl. ¶ 19.) Plaintiff Port Trinitie Homeowners Association, Inc. (Homeowners' Association) is a North Carolina nonprofit corporation that serves as the homeowners' association for Port Trinitie Subdivision. (Compl. ¶¶ 1, 11.) Plaintiff Jennifer Stump (Stump) is a member and serves as President of the Homeowners' Association. (Compl. ¶ 1.)

9. On 16 April 1987, Trinitie recorded a deed that conveyed all Community Facilities within the Development Area to the Condominium Association. (Compl. ¶ 20; Ex. A [Deed].) As with the Amended Declaration, the Deed grants the Condominium Association "all rights and causes of action to enforce assessments with regard to the Community Facilities against all owners, condominium or otherwise, in the Development Area." (Deed at p. 635.)

10. As a condition of the conveyance, the homeowners of Port Trinitie Subdivision "were granted non-exclusive and mutual rights of use and enjoyment of the Community Facilities with the owners of Port Trinitie Condominium[.]" (Deed, Ex. A.) Also as a condition of conveyance, the Deed provides that the homeowners are entitled to rights of representation as follows:

> Representation. With regard to all matters dealing with and affecting the assessments concerning the said Community Facilities or the use or administration thereof, [Port Trinitie] Subdivision shall be deemed a separate phase of Port Trinitie Condominium and each lot owner of [Port Trinitie] Subdivision shall be deemed a member of the Condominium Association. In accordance therewith, on such matters affecting the administration, management, and assessments for use, improvements, repairs, and replacements, and the determination of

rules and regulations regarding the Community Facilities, the [Homeowners' Association] shall be entitled to elect and be represented by two of its Board members as members of the Board of Directors of the Condominium Association. The Board members of the Homeowners' Association serving on the Board of the Condominium Association for the foregoing limited purposes shall be entitled to notices of meetings and rights of participation as any other Board member representing any phase of Port Trinitie Condominium[.]

Any matter affecting the Community Facilities which requires or provides for the right of a dwelling owner of [Port Trinitie] Condominium to vote shall likewise also provide for the right of each lot owner in [Port Trinitie] Subdivision to vote on the same basis and upon the same notice. On all such matters, each lot in [Port Trinitie] Subdivision and each dwelling unit in [Port Trinitie] Condominium shall be entitled to one vote.

(Deed, Ex. A.)

11. On 13 March 2010, the Homeowners' Association and the Condominium Association entered into a Memorandum of Agreement (MOA), which provides that "[t]he costs of operating and maintaining the [C]ommunity [F]acilities will be divided equally among condominiums (totaling 25) and lot owners (totaling 32) or condominiums 43.86% and lot owners 56.14%." (Deed, Ex. B [MOA] § 3(a).) The MOA further provides that "[t]he assessments for [C]ommunity [F]acilities will be the same for each condominium and each lot." (MOA § 3(b).) Additionally, "[i]t was agreed that the reserves for Community Facilities should be approximately $25,000." (MOA § 5(i).)

12. The Deed and MOA are the "Governing Documents" for the Port Trinitie development. (Compl. ¶ 28.)

13. Plaintiffs initiated this action by filing a Complaint on 26 February 2025. The Complaint purports to assert claims for: (1) breach of governing

documents; (2) breach of North Carolina General Statutes (N.C.G.S. §§ 47A and 55A); (3) breach of fiduciary duty; and (4) actions committed *ultra vires*. The Complaint also includes a request for preliminary injunction styled as a cause of action.

14. Defendants responded by filing the Motion on 28 April 2025 requesting that the Court dismiss the Complaint in its entirety. After full briefing, the Court held a hearing on the Motion on 6 August 2025, at which all parties were present and heard. (Not. of Hr'g, ECF No. 33.)

15. The Motion is now ripe for disposition.

## II.    LEGAL STANDARD

16. "A motion to dismiss under Rule 12(b)(6) 'tests the legal sufficiency of the complaint.'" *Design Gaps, Inc. v. Hall*, 2024 NCBC LEXIS 64, at *6 (N.C. Super. Ct. May 1, 2024) (quoting *Isenhour v. Hutto*, 350 N.C. 601, 604 (1999)). Dismissal of a claim is proper if "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (2018). Otherwise, "a complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Sutton v. Duke*, 277 N.C. 94, 103 (1970) (emphasis omitted); *see Jenkins v. Wheeler*, 69 N.C. App. 140, 142 (1984) (It is error for a trial court to grant a motion to dismiss "if the complaint, liberally construed, shows no insurmountable bar to recovery."). The issue for the Court "is not whether [the]

plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claim." *Brown v. Lumbermens Mut. Cas. Co.*, 90 N.C. App. 464, 471 (1988), *aff'd*, 326 N.C. 387 (1990).

17. When deciding a motion to dismiss, the Court must treat all well-pleaded allegations as true and view the facts and permissible inferences in the light most favorable to the nonmoving party. *Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332 (2019). Nevertheless, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v N.C. HHS, Div. of Facility Servs.*, 174 N.C. App. 266, 274 (2005).

18. Further, on a Rule 12(b)(6) motion, the Court's review is limited to the allegations of, and documents referenced in, the Complaint. Additional facts introduced for the first time in the briefing may not be considered. *See Jackson/Hill Aviation, Inc. v. Town of Ocean Isle Beach*, 251 N.C. App. 771, 775 (2017) ("At the motion to dismiss stage, the trial court . . . may not consider evidence outside the four corners of the complaint and the attached [documents].").

### III. ANALYSIS

19. Defendants request that each of Plaintiffs' claims be dismissed for failure to state a claim. The Court addresses each claim below.

## A. **Breach of Governing Documents**

20.     Plaintiffs allege that Defendants have failed to adhere to the conditions and obligations contained in the Governing Documents.  (Compl. ¶ 30.)  Specifically, Plaintiffs allege that the following acts "set forth certain of the Defendants' breaches":

a. Exclusion of Board and Committee Members from Board and Committee Meetings in which discussions and decisions concerning Community Facilities were had and made.

b. Exclusion of Board and Committee Members, to include the [Homeowners' Association] Treasurer, from Board and Committee Meetings in which discussions and decisions concerning the budget and expenditures on Community Facilities were had and made.

c. Failure to seek and obtain input from [Homeowners' Association] Board Member representatives, who are tasked with gathering input from [Homeowners' Association] members, concerning future improvement projects pertaining to Community Facilities.

d. Failure to appropriately inform members of [Homeowners' Association] of improvement projects related to Community Facilities that cost in excess of $1,000.00.

e. Failure to provide [Homeowners' Association] Board Member Representatives and [Homeowners' Association] members with financial records upon request as required by the [G]overning [D]ocuments.

f. Exclusion of [Homeowners' Association] Board Member Representatives and [Homeowners' Association] members from attending the 2023 and 2024 annual meetings wherein discussions and decisions concerning Community Facilities were had and made.

g. Exclusion of [Homeowners' Association] members from Board Meetings held in which votes concerning Community Facilities were had and made, despite allowing [Condominium Association] Members to attend said meeting.

h. Unilateral adoption and charge of a special assessment by the [Condominium Association] Board intended to account for budget shortfalls and the 2025 Director's and Officer's liability insurance

premium without the requisite authority within any [G]overning [D]ocuments to assess the same against the [Condominium Association] and [Homeowners' Association] owners.

    i. Improper allocation of expenses including, but not limited to, allocation of the 2025 Director's and Officer's liability insurance premium amongst [Condominium Association] and [Homeowners' Association] members, resulting in [Homeowners' Association] members harboring an inequitable portion of said premium.

(Compl. ¶ 31.) Plaintiffs request that the Court "declare that the Defendants are in breach of its (sic) duties and obligations set forth in [the] Governing Documents and, further, for an order requiring strict compliance with said duties and obligations." Plaintiffs further request that the Court issue an order declaring the special assessment invalid and for a return of the monies tendered for the assessment. (Compl. ¶ 33.)

21.    Defendants respond that Plaintiffs' claim for breach of the Governing Documents is subject to dismissal because: (1) Plaintiffs do not cite specific provisions of the Governing Documents that were allegedly breached; (2) Plaintiffs complain of conduct that is not prohibited by the Deed or MOA; and (3) Plaintiffs fail to sufficiently allege that they have suffered or will suffer any damages as a result of Defendants' alleged breaches. (Defs.' Br. Supp. Mot. Dismiss [Defs.' Br. Supp.] 9–11, ECF No. 15.)

22.    Defendants do not challenge the validity of either the Deed or the MOA, which set forth the contractual obligations of the parties. *See Simmons v. Waddell*, 241 N.C. App. 512, 520 (2015) (applying principles of contract interpretation to a deed).

23.     "The elements of a claim for breach of contract are the existence of a valid contract and breach of that contract's terms. When these elements are alleged, 'it is error to dismiss a breach of contract claim under Rule 12(b)(6).'" *Carolina Med. Partners, PLLC v. Shah*, 2024 NCBC LEXIS 86, at *5 (N.C. Super. Ct. June 27, 2024) (quoting *Woolard v. Davenport*, 166 N.C. App. 129, 134 (2004)); *Bigelow v. Sassafras Grove Baptist Church*, 247 N.C. App. 401, 404 (2016).

24.     A claim for breach of contract is not subject to Rule 9's heightened pleading standards. *AYM Techs., LLC v. Rodgers*, 2018 NCBC LEXIS 14, at *52−53 (N.C. Super. Ct. Feb. 9, 2018).  Rather, to state a claim, Plaintiffs must meet Rule 8's liberal standard, which requires only a "short and plain statement of the claim" sufficient to put the court and parties on notice of the events giving rise to the claim. N.C. R. Civ. P. 8(a)(1); *see also Pyco Supply Co. v. Am. Centennial Ins. Co.*, 321 N.C. 435, 442 (1988) ("Under the notice theory of pleading, a statement of a claim is adequate if it gives sufficient notice of the events or transactions which produced the claim to enable the adverse party to understand its nature and basis and to file a responsive pleading."); *Intersal, Inc. v. Wilson*, 2023 NCBC LEXIS 29, at *41 n. 18 (N.C. Super. Ct. Feb. 23, 2023) (A plaintiff "is not required to state a breach of contract claim with particularity.").

25.     Defendants cite *Howe v. Links Club Condo. Ass'n* for the proposition that pleading a claim for breach of contract requires more specificity than is evidenced in the Complaint.  263 N.C. App. 130 (2018).  The Court disagrees.  In *Howe*, the plaintiffs failed to allege that the agreement at issue was a binding contract to which

the defendant was a party. The Complaint in the instant case does not suffer from the same shortcoming. Here, the Complaint identifies the contract at issue as the Governing Documents and then lists alleged breaches of that contract. Nothing further is required at this stage of the case. *See Vanguard Pai Lung, LLC v. Moody,* 2019 NCBC LEXIS 39, at *11 (N.C. Super. Ct. June 19, 2019) ("[S]tating a claim for breach of contract is a relatively low bar[.]").

26. Moreover, "[u]nder North Carolina law, proof of damages is not an element of a claim for breach of contract." *Crescent Univ. City Venture, LLC v. AP Atl., Inc.,* 2019 NCBC LEXIS 46, at *127 (N.C. Super. Ct. Aug. 8, 2019) (citation omitted); *see also Soc'y for the Hist. Pres. of the Twenty-Sixth N.C. Troops, Inc. v. City of Asheville,* 385 N.C. 744, 751 (2024) ("Where a party alleges the existence of a valid contract and that such contract has been breached, that party has alleged a legal injury that gives rise to standing."); *Bryan Builders Supply v. Midyette,* 274 N.C. 264, 271 (1968) (explaining that in a contract action proof of breach alone is enough to avoid judgment of nonsuit); *Delta Envtl. Consultants, Inc. v. Wysong & Miles Co.,* 132 N.C. App. 160, 172 (1999) ("[I]n a suit for damages for breach of contract, proof of the breach would entitle the plaintiff to nominal damages at least." (quotation marks and citation omitted)).

27. Accordingly, on this basis, Defendants' Motion is **DENIED**.[3]

---

[3] The parties did not state their positions regarding each of the alleged breaches in their briefing. Consequently, the Court does not evaluate whether, under the Governing Documents, Defendants could be liable for each of the many breaches alleged. Rather, the Court concludes only that Plaintiffs have stated a claim for breach of contract that requires further evaluation in discovery.

## B. Breach of North Carolina General Statutes

28.     Plaintiffs contend that the failings they allege constitute breaches of the Governing Documents also violated Sections 47A-10 and 47A-20 of the North Carolina General Statutes, as well as the North Carolina Nonprofit Corporation Act. (Compl. ¶¶ 36–37.)

29.     The North Carolina Unit Ownership Act, N.C.G.S. §§ 47A-1 *et seq.*, provides in relevant part:

> Each *unit owner* shall comply strictly with the bylaws and with the administrative rules and regulations adopted pursuant thereto, as either of the same may be lawfully amended from time to time, and with the covenants, conditions and restrictions set forth in the declaration or in the deed to his unit.  Failure to comply with any of the same shall be grounds for an action to recover sums due, for damages or injunctive relief, or both, maintainable by the manager or board of directors on behalf of the association of unit owners or, in a proper case, by an aggrieved unit owner.

N.C.G.S. § 47A-10 (emphasis added).  Defendants argue that Plaintiffs lack standing to bring this claim.  (Defs.' Br. Supp. 11–12.)

30.     The Court agrees with Defendants.  Plaintiffs may have been afforded certain rights as "members" by the Governing Documents, but nowhere do they plead that they are condominium unit owners with standing to pursue this claim.  "Since the statute specifically designates who may sue to enforce the restrictions, it controls." *Laurel Park Villas Homeowners Asso. v. Hodge*s, 82 N.C. App. 141, 144 (1986).[4]

---

[4] At oral argument, Plaintiffs' counsel conceded the inapplicability of Section 47A-10.

31.     Plaintiffs also allege that Defendants have violated Section 47A-20 of the North Carolina Unit Ownership Act, which provides:

> The manager or board of directors, or other form of administration provided in the bylaws, as the case may be, shall keep detailed, accurate records in chronological order of the receipts and expenditures affecting the common areas and facilities, specifying and identifying the maintenance and repair expenses of the common areas and facilities and any other expense incurred. Both said book and the vouchers accrediting the entries thereupon shall be available for examination by *all the unit owners*, their duly authorized agents or attorneys, at convenient hours on working days that shall be set and announced for general knowledge. All books and records shall be kept in accordance with good and accepted accounting practices and an outside audit shall be made at least once a year.

N.C.G.S. § 47A-20 (emphasis added).

32.     Plaintiffs specifically allege that Defendants violated Section 47A-20 by "fail[ing] to provide [Homeowners' Association] members with financial records upon request . . . as well as failure to perform at least one (1) annual audit per year." (Compl. ¶ 37(e).)  However, the statute, on its face, gives inspection rights only to "unit owners, their duly authorized agents or attorneys[.]"  As observed above, Plaintiffs may have been afforded certain rights as "members" by the Governing Documents, but they do not plead that they are condominium unit owners. Consequently, Plaintiffs lack standing to pursue this claim.

33.     Lastly, Plaintiffs broadly allege that Defendants' actions violated Article 16 of Section 55A of the North Carolina General Statutes.  While the Complaint does not specify which provisions of N.C.G.S. § 55A-16 Defendants allegedly violated, it appears from the recitation of alleged breaches that Plaintiffs contend that

Defendants have failed to allow them to inspect the Condominium Association's financial records. (Compl. ¶37(e).)

34. Pursuant to N.C.G.S. § 55A-16-01:

(a) A corporation shall keep as permanent records minutes of all meetings of its members and board of directors, a record of all actions taken by the members or directors without a meeting pursuant to [N.C.]G.S. 55A-7-04, 55A-7-08, or 55A-8-21, and a record of all actions taken by committees of the board of directors in place of the board of directors on behalf of the corporation.

(b) A corporation shall maintain appropriate accounting records.

****

(e) A corporation shall keep a copy of the following records at its principal office:

(4) The minutes of all membership meetings, and records of all actions taken by the members without a meeting pursuant to [N.C.]G.S. 55A-7-04 or [N.C.]G.S. 55A-7-08, for the past three years; [and]

(5) All written communications to members generally within the past three years, and the financial statements, if any, that have been furnished or would have been required to be furnished to a member upon demand under [N.C.]G.S. 55A-16-20 during the past three years[.]

N.C.G.S. § 55A-16-01(a)−(b), (e)(4)−(5).

35. N.C.G.S. 55A-16-02 then provides for inspection of records *by members of the nonprofit corporation* as follows:

(a) *A member* is entitled to inspect and copy, at a reasonable time and location specified by the corporation, any of the records of the corporation described in [N.C.]G.S. 55A-16-01(e) if the member gives the corporation written notice of his demand at least five business days before the date on which the member wishes to inspect and copy.

(b) *A member* is entitled to inspect and copy, at a reasonable time and reasonable location specified by the corporation, any of the following records of the corporation if the member meets the requirements of subsection (c)[5] of this section and gives the corporation written notice of his demand at least five business days before the date on which the member wishes to inspect and copy:

> (1) Excerpts from any records required to be maintained under [N.C.]G.S. 55A-16-01(a), to the extent not subject to inspection under [N.C.]G.S. 55A-16-02(a); [and]

> (2) Accounting records of the corporation.

N.C.G.S. § 55A-16-02(a), (b)(1)−(2) (emphasis added).

36.     The Deed conferred upon Plaintiffs the status of members of the Condominium Association "[w]ith regard to all matters dealing with and affecting the assessments concerning the . . . Community Facilities or the use or administration thereof[.]"  Thus, Plaintiffs were contractually given the right to inspect certain records pertaining to the Community Facilities.  Still, Plaintiffs are required to comply with Section 55A-16-02, and they fail to allege that they have done so.  *See, e.g., Technik v. WinWholesale, Inc.*, 2012 NCBC LEXIS 5, at *21 (N.C. Super. Ct. Jan. 13, 2012) (describing like requirements in Section 55-16-02(c) as "conditions precedent to court-ordered inspection").

---

[5] Subsection (c) provides:

> A member may inspect and copy the records identified in subsection (b) of this section only if:
> > (1) The member's demand is made in good faith and for a proper purpose;
> > (2) The member describes with reasonable particularity the purpose and the records the member desires to inspect; and
> > (3) The records are directly connected with this purpose.

37.     Accordingly, on this basis, Defendants' Motion is **GRANTED**, and Plaintiffs' claim for breach of North Carolina General Statute Sections 47A-10 and, 47A-20 is **DISMISSED with prejudice.**  Plaintiffs' claim for breach of North Carolina General Statute 55A-16 is also **DISMISSED with prejudice**.[6]

### C. Breach of Fiduciary Duty

38.     Plaintiffs bring their claim for breach of fiduciary duty against both the Condominium Association and the Individual Defendants.  Among the list of alleged breaches are the same allegations that Plaintiffs contend constitute breaches of the Governing Documents and the General Statutes.  In addition, they allege that Defendants breached their fiduciary duties by:

> a. Failure to maintain appropriate reserve funds to maintain and improve Community Facilities.
>
> b. Failure to review Memorandum of Agreement to ensure revisions are made that are necessary to accommodate needs of the community and account for inflation.
>
> c. Failure to review financial policies and procedures to ensure revisions are made that are necessary to accommodate needs of the community and account for inflation.
>
> d. Failure to adequately maintain, preserve and monitor Community Facilities such as beach/dune walkovers.
>
> e. Failure to adequately audit the financial status of the accounts designated for maintenance and improvement of Community Facilities.

(Compl. ¶ 43.)

---

[6] "The decision to dismiss an action with or without prejudice is in the discretion of the trial court[.]" *First Fed. Bank v. Aldridge*, 230 N.C. App. 187, 191 (2013).

39.     A claim for breach of fiduciary duty has three elements: (1) existence of a fiduciary duty; (2) breach of that duty; and (3) injury proximately resulting from the breach.  *See Green v. Freeman*, 367 N.C. 136, 141 (2013).

### 1. <u>Condominium Association</u>

40.     Defendants argue that Plaintiffs' claim for breach of fiduciary duty as to the Condominium Association is subject to dismissal because the Condominium Association does not owe a fiduciary duty to Plaintiffs.  (*See* Defs.' Br. Supp. 13−16.)

41.     "[A] fiduciary relationship is generally described as arising when 'there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence.' "  *Dallaire v. Bank of Am., N.A.*, 367 N.C. 363, 367 (2014) (quoting *Green*, 367 N.C. at 141).

42.     "North Carolina recognizes two types of fiduciary relationships: *de jure*, or those imposed by operation of law, and *de facto*, or those arising from the particular facts and circumstances constituting and surrounding the relationship."  *Hager v. Smithfield E. Health Holdings, LLC*, 264 N.C. App. 350, 355 (2019).

43.     The relationship between Plaintiffs and the Condominium Association is contractual.[7]  "[P]arties to a contract do not thereby become each others' fiduciaries; they generally owe no special duty to one another beyond the terms of the contract[.]" *Branch Banking & Tr. Co. v. Thompson*, 107 N.C. App. 53, 61 (1992); *Progress Point*

---

[7] The Complaint does not allege any relationship, contractual or otherwise, between Ms. Stump and the Condominium Association.

*One-B Condo. Ass'n v. Progress Point One Prop. Owners Ass'n*, 2015 NCBC LEXIS 22, at *12 (N.C. Super. Ct. Mar. 2, 2015) ("[A] contractual relationship, standing alone, does not create a fiduciary relationship."). Nothing in the Governing Documents creates a fiduciary duty.[8]

44. Further, the facts alleged are insufficient to create a *de facto* fiduciary duty between the Condominium Association and Plaintiffs. "The standard for finding a *de facto* fiduciary relationship is a demanding one: 'Only when one party figuratively holds all the cards—all the financial power or technical information, for example—have North Carolina courts found that the special circumstance of a fiduciary relationship has arisen.'" *Lockerman v. S. River Elec. Mbrshp. Corp.*, 250 N.C. App. 631, 636 (2016) (quoting *S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC*, 189 N.C. App. 601, 613 (2008)).

45. Plaintiffs contend that the Condominium Association "holds all the cards" because the Condominium Association has seven representatives with the right to vote on matters pertaining to Community Facilities, while the Homeowners' Association is entitled to only two voting representatives. According to Plaintiffs, this disparity necessarily means that the Condominium Association will dominate any decision regarding Community Facilities. (Pls.' Br. Opp'n 14–15, ECF No. 29.)

---

[8] Moreover, the fiduciary duty that typically exists does not run to the unit owners but rather runs to the association. *See Byrd v. Fat City Condo. Owners Ass'n*, 2023 U.S. Dist. LEXIS 208792, at *17–18 (W.D.N.C. Nov. 21, 2023) (recognizing that while officers and members of a board owe fiduciary duties to the association and the unit owners under the North Carolina Condominium Act, there is nothing to suggest that the association itself owes fiduciary duties to the unit owners).

46. But Plaintiffs assume that all seven voting members of the Condominium Association Board will vote as a majority bloc and that the two voting members of their Board will always be on the losing side. There is nothing in the Complaint to suggest that such an arrangement to disenfranchise Plaintiffs exists. To the contrary, as Plaintiffs allege, the Governing Documents contemplate equality among the representatives who are afforded voting rights. (Compl. ¶23.) Absent sufficient allegations of dominance and control, Plaintiffs have failed to state this claim. *Cf. Vanguard Pai Lung, LLC*, 2019 NCBC LEXIS 39, at *17 ("A majority interest does not necessarily equate to control.").

## 2. **Individual Defendants**

47. The Individual Defendants, some of whom are allegedly officers of the Board of Directors of the Condominium Association, owe *de jure* fiduciary duties, not to Plaintiffs, but to the Condominium Association and its unit owners pursuant to the North Carolina Condominium Act, N.C.G.S. §§ 47C-1-101 *et seq.* Article 3 of the Act provides:

> (a) Except as provided in the declaration, the bylaws, in subsection (b) or in other provisions of this chapter, the executive board may act in all instances on behalf of the association. In the performance of their duties, the officers and members of the executive board shall be deemed to stand in a fiduciary relationship *to the association and the unit owners* and shall discharge their duties in good faith, and with that diligence and care which ordinarily prudent persons would exercise under similar circumstances in like positions.

N.C.G.S. § 47C-3-103 (emphasis added).

48. In addition, Sections 55A-8-30(a)(1)−(3) of the North Carolina Nonprofit Corporation Act requires a director to act in the best interests of the nonprofit

*corporation*, not its members. *See* N.C.G.S. § 55A-8-30(a)(1)–(3) ("A director shall discharge his duties as a director, including his duties as a member of a committee: (1) In good faith; (2) With the care an ordinarily prudent person in a like position would exercise under similar circumstances; and (3) In a manner the director reasonably believes to be in the best interests of the corporation."); *Vill. at Motts Landing Homeowners' Ass'n v. Aftew Props.*, 2023 NCBC LEXIS 100, at *8 (N.C. Super. Ct. Aug. 14, 2023) (a director "must be fair to the corporation"); *cf. Keener Lumber Co. v. Perry*, 149 N.C. App. 19, 26 (2002) ("[D]irectors of a corporation generally owe a fiduciary duty to the corporation and . . . the action is properly maintained by the corporation[.]" (emphasis omitted)).

49.     Furthermore, even if there were fiduciary duties that ran to Plaintiffs, additional allegations and evidence would be necessary to overcome the hurdle presented by the business judgment rule. *See Winters v. First Union Corp.*, 2001 NCBC LEXIS 5, at *10 (N.C. Super. Ct. July 12, 2001) ("In order to survive a motion to dismiss, the complaint must allege, in other than conclusory terms, that the board was inattentive or uninformed, acted in bad faith or that the board's decision was unreasonable.").

50.     Accordingly, on this basis, Defendants' Motion is **GRANTED**, and Plaintiffs' claim for breach of fiduciary duty is **DISMISSED with prejudice**.

### D. Preliminary Injunction

51.     Plaintiffs' fourth cause of action is titled "Request for Preliminary Injunction." Business Court Rule 7 requires any motions, including motions for

preliminary injunctions, to be filed as separate motions with supporting briefs. *See Vanguard Grp., Inc. v. Snipes*, 2022 NCBC LEXIS 56, at \*18 (N.C. Super. Ct. June 3, 2022).

52. Furthermore, "[a] preliminary injunction is an ancillary remedy, not an independent cause of action." *Lendingtree, LLC v. Intercontinental Cap. Grp., Inc.*, 2017 NCBC LEXIS 54, at \*16 (N.C. Super. Ct. June 23, 2017) (quoting *Revelle v. Chamblee*, 168 N.C. App. 227, 230 (2005)). Therefore, the purported cause of action for a preliminary injunction fails to state a claim. *Id.*

53. Accordingly, the Court **GRANTS** Defendants' Motion. Plaintiffs' fourth cause of action—"Request for Preliminary Injunction"—is **DISMISSED** without prejudice to Plaintiffs' ability to pursue a motion for preliminary injunction should such relief be warranted.

### E. **Actions Committed *Ultra Vires***

54. Plaintiffs allege the Individual Defendants have committed *ultra vires* acts "through their abuse, misapplication, and violation of the provisions of the Governing Documents." (Compl. ¶¶ 47–52.) Defendants respond that this claim fails because the North Carolina Nonprofit Corporation Act limits Plaintiffs' ability to seek this relief. (Defs.' Br. Supp. 19–20.)

55. Defendants are correct that "[t]he North Carolina Nonprofit Corporation Act generally prohibits claims challenging the validity of an action taken by a nonprofit corporation as ultra vires, with limited exceptions." *Cole v. Bonaparte's Retreat Prop. Owners' Ass'n*, 259 N.C. App. 27, 38 (2018).

56.     Chapter 55A of the North Carolina Nonprofit Corporation Act provides:

(a) Except as provided in subsection (b) of this section, the validity of corporate action shall not be challenged on the ground that the corporation lacks or lacked power to act.

(b) A corporation's power to act may be challenged:

> (1) In a proceeding by a member or a director *against the corporation to enjoin the act.*
>
> (2) In a proceeding by the corporation, directly, derivatively, or through a receiver, trustee, or other legal representative, against an incumbent or former director, officer, employee, or agent of the corporation; or
>
> (3) In a proceeding by the Attorney General under [N.C.]G.S. 55A-14-30.

N.C.G.S. § 55A-3-04 (emphasis added).

57.     Plaintiffs' only avenue to challenge an *ultra vires* act committed by a director or officer of the Condominium Association would be to contend that they are members of the Condominium Association and to bring their claim under subsection (b)(1) of the Nonprofit Corporation Act.  Even if they were successful in establishing standing, however, neither Plaintiffs' attempted claim nor their requested relief is contemplated by the Act.  Rather than pursuing injunctive relief against the corporation to stop the alleged *ultra vires* acts, Plaintiffs seek "an order holding [the Individual] Defendants personally liable for any damages stemming from the improper actions . . . [and] for an order forbidding [the] Individual Defendants from serving in any representative capacity supporting the [Condominium] Association now and in the future, and for any other appropriate relief the Court may deem just

and proper." (Compl. ¶ 52.) The Court concludes that this attempted recast of Plaintiffs' breach of contract claim fails.

58. Accordingly, Individual Defendants' Motion to Dismiss is **GRANTED**, and this claim is **DISMISSED with prejudice**.

## IV.  CONCLUSION

59. **WHEREFORE**, the Court hereby **GRANTS in part** and **DENIES in part** the Motion as follows:

a. As to Plaintiffs' first cause of action (breach of governing documents), the Motion is **DENIED**.

b. As to Plaintiffs' second cause of action (breach of North Carolina General Statutes), the Motion is **GRANTED**, and the claim is **DISMISSED with prejudice**.

c. As to Plaintiffs' third cause of action (breach of fiduciary duty), the Motion is **GRANTED**, and the claim is **DISMISSED with prejudice**.

d. As to Plaintiffs' fourth cause of action (request for preliminary injunction), the Motion is **GRANTED**, and the claim is **DISMISSED** without prejudice to Plaintiffs' ability to pursue a motion for preliminary injunction should such relief be warranted.

e. As to Plaintiffs' fifth cause of action (actions committed *ultra vires*), the Motion is **GRANTED**, and the claim is **DISMISSED with prejudice**.

**SO ORDERED**, this the 7th day of August, 2025.

/s/ Julianna Theall Earp

Julianna Theall Earp
Special Superior Court Judge
 for Complex Business Cases